WALTER J. WENTON & another *vs.* COMMONWEALTH.

Worcester.   September 25, 1956. — November 30, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Way,* Public: access, State highway, limited access way. *Real Property,* Access to public way. *Evidence,* Of value, Relevancy and materiality. *Damages,* Eminent domain. *Eminent Domain,* Damages. *Practice, Civil,* Charge to jury.

If the power of the department of public works under G. L. (Ter. Ed.) c. 81, § 21, as amended, to require a permit for and to regulate the digging up or opening of a State highway was relevant at all to the right of access thereto of an abutting landowner, it did not extend to barring his access entirely. [80]

The fact that a deed of land given in confirmation of a taking of the land for a State highway did not reserve a right of access to the highway from remaining land of the grantor abutting it did not show that he had given up his right of access. [80]

In a proceeding for assessment of land damages, after a witness had testified as to sales of other parcels in the vicinity of the land involved, his contract for those sales was admissible in the discretion of the judge. [81]

Evidence of the assessed value of land in the vicinity of the land involved in a proceeding for assessment of land damages was inadmissible. [81]

No reversible error appeared, in a proceeding for assessment of damages resulting from the layout of a limited access highway, in certain instructions to the jury relating to possible use of the petitioner's premises for a filling station. [82]

In a proceeding for assessment of damages resulting to the petitioner's premises from the layout of an abutting public way as a limited access highway, evidence of the fact that the owner of other land on the way in the vicinity of the petitioner's premises had obtained a permit for the sale of gasoline and had leased his land to an oil company was admissible, but the lease itself as showing the rental value of the other land was not admissible. [82–83]

An instruction to the jury as to a lessening of the rental value of the land involved in a proceeding for assessment of damages resulting from the layout of a limited access highway was error in the absence of any evidence of the rental value. [83–84]

PETITION, filed in the Superior Court on July 1, 1954.

The case was tried before *Warner,* J.

*George Fingold,* Attorney General, *& Vincent J. Celia,* Assistant Attorney General, for the Commonwealth, submitted a brief.

*Willard I. Shattuck, Jr.,* for the petitioners.

WHITTEMORE, J.   This is a petition to assess damages alleged to have resulted to the petitioners' land in Fitchburg from the laying out on July 14, 1953, of Route 2, a State highway, as a limited access highway.

The Commonwealth excepted to the denial of its motion to direct a verdict, to the giving and the denial of certain requests for instructions, and to the admission of and refusal to strike evidence.

Prior to a taking for State highway purposes in 1946 the petitioners owned about nine acres of land.   The 1946 taking left them with about 8.02 acres abutting on Route 2.   The 1953 layout cut off any rights of access to the State highway along an extensive frontage.

General Laws (Ter. Ed.) c. 81, § 7C, inserted by St. 1943,

c. 397, and as amended by St. 1949, c. 583, and St. 1950, c. 829, after authorizing the laying out of limited access ways provides, "If a limited access way is laid out in whole or in part in the location of an existing public way, the owners of land abutting upon such existing public way shall be entitled to recover damages under chapter seventy-nine for the taking of or injury to their easements of access to such public way."

The Commonwealth contended as ground for its motion and its requests for instructions which were not given that there was no easement of access appurtenant to the petitioners' land in 1953 because G. L. (Ter. Ed.) c. 81, § 21, as amended, provides that "No state highway shall be dug up, nor opening made therein for any purpose . . . without the written permit of the department, and then only in accordance with its regulations . . ." and that the petitioners had obtained no such permit after the 1946 taking. There is nothing in this.

The petitioners from 1946 to July 14, 1953, had at least a right of formal access by way of driveway or driveways from their land to the State highway at such point or points as the department of public works might reasonably fix. The power to regulate the digging and opening of the State highway, if relevant, did not include the power to bar access entirely. *Gleason* v. *Metropolitan District Commission*, 270 Mass. 377, 381. *Anzalone* v. *Metropolitan District Commission*, 257 Mass. 32, 36. *Valentino* v. *Commonwealth*, 329 Mass. 367, 368.

The deed given by the petitioners in 1946 confirmatory of the taking did not purport to release the right of access. It was not necessary to reserve an easement of access over the land granted to the Commonwealth as a part of the highway location. "Access to a public way is one of the incidents of ownership of land bounding thereon, and this right is appurtenant to the land . . . ." *Anzalone* v. *Metropolitan District Commission*, 257 Mass. 32, 36.

The petitioners were entitled to recover the damage to what remained of their real estate after the appurtenant

easement had been taken away from it and as a result of losing the easement. G. L. (Ter. Ed.) c. 79, § 12. *Nichols* v. *Commonwealth,* 331 Mass. 581. Nothing turns on the fact that the petitioners' acreage was the same as before the taking. See *United States Gypsum Co.* v. *Mystic River Bridge Authority,* 329 Mass. 130, 134. Compare idem at page 140.

The motion for a directed verdict was properly denied.

One Maki, called by the petitioners, testified without objection to the sale in 1953 of five acres of land from an eleven acre tract. On cross-examination he testified to the subsequent sale of the other land in the tract. Thereafter the judge on the offer of the petitioners allowed in evidence the 1953 sale contract in which Maki contracted to convey both the parcels referred to. The admission of this agreement was within the judge's discretion.

Before evidence of either sale was received, Maki was allowed to testify that the assessed value of the eleven acre tract in 1953 was $250. This was inadmissible as evidence of value and should have been excluded. *Johnson* v. *Lowell,* 240 Mass. 546, 550. The use of the assessed value of the subject parcel as evidence of its value is solely dependent on the statute. G. L. (Ter. Ed.) c. 79, § 35.

We consider together the respondent's exceptions to the admission of evidence in respect of a lease of other land on Route 2 to Socony Vacuum Oil Company, admitted in evidence over the respondent's objection, and to instructions given as to the possible use of the petitioners' land for the sale of gasoline. It was uncontroverted that the petitioners had no license for the keeping or sale of gasoline. The judge instructed the jury in substance that the petitioners had a right to the highest and best use of their land, that is, the most sensible and reasonable use, one which must be demonstrated to the jury "as a reasonable, likely-to-be, probable use of the premises," and that although the subject land lay in an industrial area under the local zoning law and could be put to any "'legal' use," unless there was

such a permit the sale of gasoline would not be a legal business, but if a permit were obtained such business would be legal under the zoning law.

The judge also charged in substance that the petitioners could recover to the extent that they had satisfied the jury by the fair weight of the believable evidence that there was a lessening in the fair market value of the subject land, a lessening in what a willing buyer, not obliged to buy, would pay to a willing seller, not obliged to sell, on the day after the taking as compared with what would have been paid the day before.

The judge also at the close of the charge gave all the petitioners' requests including the instruction, to which the respondent excepted, that in determining the market value of the land "the jury must take into consideration the capabilities of the land and all the uses and purposes to which it was then adapted or might be applied under the . . . zoning ordinances . . . regardless of whether a license, if any was required, was then in effect for any such use or uses." Although this instruction apart from the rest of the charge might have been misleading in failing to state that the possible use of the land for a filling station was relevant only so far as the possibility that the necessary license might thereafter be obtained was found by the jury to be reflected in market value at the time of the taking, we think that the earlier statements in the charge made this reasonably clear and it was within the trial judge's discretion how far to restate instructions already given.

One Charbonneau testified that she owned a tract of land on Route 2 about three miles east of the subject property. The Commonwealth objected and excepted to her testimony that a gasoline permit had been issued to her in 1946; and that in 1952 she had leased the land to the Socony Vacuum Oil Company for a twenty year term. The lease was admitted in evidence subject to the respondent's objection and exception and read to the jury. It shows the lease for a twenty year term of about a third of an acre for the rent of $600 a year. This evidence of rental value of

other land should have been excluded. While rental value of a parcel the market value of which is in issue may be received as some indication of the fair market value of that parcel (*Amory* v. *Commonwealth*, 321 Mass. 240, 258; *Lembo* v. *Framingham*, 330 Mass. 461, 463), the rental value of similar premises, as distinguished from actual sales near in time, is not sufficiently relevant to warrant the extension of the field of controversy and fact finding which is entailed in its admission. See *Beale* v. *Boston*, 166 Mass. 53, 56. *Old Colony Railroad* v. *F. P. Robinson Co.* 176 Mass. 387, 390. *McCabe* v. *Chelsea*, 265 Mass. 494, 495–496. *Iris* v. *Hingham*, 303 Mass. 401, 407–408.

The admission of the testimony of this witness, apart from the lease and its terms as set forth or described by the witness, was, we think, within the trial judge's discretion. So far as it might be a basis for inferring that if the petitioners had a license they might have the opportunity to use their land for the sale of gasoline, it brought into the case a relevant consideration of the benefit of which the petitioners had theretofore been deprived by the striking, on the respondent's motion, of expert testimony that the best use to which the subject land could have been put in July, 1953, was a filling station. Uses to which the property "might probably be applied may be taken into consideration." *Tigar* v. *Mystic River Bridge Authority*, 329 Mass. 514, 517. That there was already a station within three miles of the subject land might be a basis for inferring either that the area was a good one for gasoline stations or that it might be more difficult to get another license or to set up a competitive station. Both considerations are of some relevance, though remote.

There was no error in denying the motions to strike the testimony of two witnesses for the petitioners who gave their opinions of the diminution in value of the subject land.

The Commonwealth excepted to instructions given on the petitioners' request in respect of measuring damage by "a lessening in the rental value of his unimproved land,"

and bases its claim of error on the absence of evidence of rental value of the subject premises.   In the circumstances there was no occasion for this instruction and it should not have been given.   It made it more likely that the jury would give weight to the inadmissible Charbonneau lease.

Although in all the circumstances disclosed in the record it is possible that the respondent was not prejudiced by the erroneous rulings and instruction (G. L. [Ter. Ed.] c. 231, § 132) we cannot know that this is so.

*Exceptions sustained.*