RICHARD C. LACROIX vs. COMMONWEALTH.

Middlesex.    February 2, 1965. — March 3, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Eminent Domain*, Right to damages.   *Way*, Public: limited access way.

Where it appeared that an owner of a parcel of land abutting upon an
existing public way had a small portion of his parcel not abutting the
way taken for a new limited access State highway crossing the way at a
point near but beyond his land southerly, that the way was afforded no
access to the State highway and became a dead end way there, and that
the owner had exactly the same frontage on the way before and after
the establishment of the State highway, it was held that he had no right
to damages under G. L. c. 81, § 7C; c. 79, § 12, by reason of the fact
that the establishment of the State highway cut off his short route
southerly on the way to certain public ways beyond the State highway
and he could reach them only by proceeding northerly on the way and
by traveling several miles on a circuitous route.

Two PETITIONS for the assessment of damages filed in the
Superior Court on December 7, 1959, and May 26, 1960,
respectively.

The cases were tried together before *Tomasello, J.*

*F. Dale Vincent, Jr.,* Assistant Attorney General, for the
respondent.

No argument or brief for the petitioner.

CUTTER, J.   In 1959 the Commonwealth, for the con-
struction of Route 495, took a small triangular parcel of
LaCroix's land, partly in Westford and partly in Littleton.
See the accompanying plan, on which the parcel is indi-
cated in solid black within the limits of Route 495.   Prior
to the taking, all of LaCroix's land (shaded on the plan)
had access to Howard Road, which then ran north from a
point on King Street (at or near its junction with Littleton
Road) about 1,250 feet to the nearest point of LaCroix's
land.   Howard Road then continued and still runs north
through LaCroix's land for what from a map appears to
be nearly a mile.   There, after a right angle turn, it runs
to the east a similar distance to Concord Road (Route 225).
From its junction with Howard Road, Concord Road runs
southeast to Littleton Road.

LaCroix *v.* Commonwealth.

Route 495 was built as a limited access highway and there is no access to it from Howard Road, which has become a dead-end street, with a turnaround, just north of Route 495. Concord Road now passes under Route 495 and still has its southern terminus at Littleton Road. On the plan, dotted lines within the limits of Route 495 indicate the now closed portion of the former route of Howard Road.

LaCroix brought two petitions for the assessment of damages caused by the taking. These have been combined in one proceeding. The jury made an award of $4,400. The Commonwealth's outline bill of exceptions (see amended Rule 22 of the Rules for the Regulation of Practice before the Full Court, 345 Mass. 795) presents exceptions to the trial judge's refusal to strike certain testimony, to the failure to give certain requests for rulings,[1] and to the charge.

All these exceptions raise essentially the same issue, viz. whether LaCroix's untaken, remaining land suffered either (1) any damage for which he was entitled to compensation under G. L. c. 81, § 7C (as amended through St. 1957, c. 700, § 1), or (2) any special and peculiar injury as a consequence (a) of the taking and laying out of Route 495, or (b) of the complete severance of Howard Road at a point about 300 feet south of the most southerly point of LaCroix's land abutting on Howard Road. The consequence of this severance of Howard Road was that LaCroix, who formerly had reached King Street from his land by a short 1,250 foot drive south on Howard Road, now can reach King Street only by means of traversing substantially the whole length of Howard Road, a long stretch of Concord Road, and a longer distance on Littleton Road, a total of several miles of circuitous travel. The evidence indicated (1) that the injury to LaCroix was substantial if, as mat-

---

[1] These requests read, "1. In appraising the damage to . . . [LaCroix, he] is not permitted . . . to recover for an alteration of the highway . . . network located away from the actual taking by the Commonwealth. 2. If . . . [LaCroix] had the same access to the same public way before the taking as after the taking, he is not entitled to recover for injury . . . due to the severance of that public way . . . by a public improvement at a place away from the access to such public way which . . . [LaCroix] had before the taking and which access was unaffected by the taking, unless such injury . . . is special or peculiar to such parcel as distinguished from common injury to other land abutting such public way."

ter of law, he was entitled to recover the amount of any reduction in the value of his remaining land by reason of the severance of Howard Road and the loss of a short, convenient approach to King Street, and (2) that the injury caused by the taking of the small triangular parcel was not significant, if LaCroix, as matter of law, was not entitled to damages based on the injury to his remaining land caused by the severance of Howard Road.

The trial judge refused to give the instructions requested in behalf of the Commonwealth. He instructed the jury, in effect, that, in computing the damages to be awarded to LaCroix, they might take into account any injury to the remaining land caused by the severance of Howard Road between LaCroix's land and King Street, under the principles stated in c. 81, § 7C,[2] and in *Nichols* v. *Commonwealth,* 331 Mass. 581, 583–585.

In the *Nichols* case owners of land along the Newburyport turnpike had (p. 582) "a frontage of approximately 410 feet on the turnpike to which . . . [they] had unlimited direct access." The turnpike was then made a limited access highway and land "on the front of this parcel bordering on the turnpike" was taken. During the trial of that case, the trial judge ruled (p. 583) that if the owners had "access to and from the rear premises, from and to . . . some other public way, then . . . [they] would not be entitled in law to compensation by reason of lack of access to the pike and any opinion of . . . experts . . . based upon such . . . lack of access would be improper and of no value to the jury." This court, after referring to G. L.

---

[2] Section 7C, as amended, reads in part, "A limited access way is . . . a highway over which the easement of access in favor of abutting land exists only at such points and in such manner as is designated in the order of laying out. [A] All of the provisions of law in regard to the laying out . . . of state highways and to damages therefor shall apply to limited access ways. If a limited access way is laid out in whole or in part [B] *in the location of an existing public way,* the owners of land [C] *abutting upon such existing public way* shall be entitled to recover damages under chapter seventy-nine for the [D] *taking of or injury to their easements of access to such public way* . . ." (emphasis supplied). The bracketed letters in the quotation have been inserted for convenience in referring to the words immediately following each such letter.

LaCroix v. Commonwealth.

c. 79, § 12,[3] sustained exceptions to this ruling and said (pp. 584–585) that § 7C "clearly provides that if a limited access highway is laid out in the location of an existing public way, the owner of land abutting upon such existing way shall be entitled to recover damages for the taking of or injury to his access to such public way or to such new highway. By these provisions the Legislature plainly established that any impairment or deprivation of access which an owner formerly had to a public way may so affect the value of the remainder of the land not taken as to be compensable in damages to be recovered under c. 79, § 12."

In *Wenton* v. *Commonwealth*, 335 Mass. 78, 79–81, § 7C was applied in a situation where an owner of about nine acres of land abutting on a State highway was by a "layout cut off [from] any rights of access to the State highway along an extensive frontage." *Parrotta* v. *Commonwealth*, 339 Mass. 402, 405, dealt (upon demurrer to somewhat obscure allegations) with a limited access highway which apparently cut off, at least during construction, access to highways in some measure affected by the project from land abutting upon those highways.

No decision under § 7C deals with the situation here presented. Although a piece of LaCroix's land was actually taken for this limited access highway project, neither that taking nor the project itself had any effect whatsoever upon LaCroix's easement of access to Howard Road, the only highway upon which, prior to the taking, his land abutted.

LaCroix did not contend that the taking of the small triangular parcel in and of itself caused appreciable damage to his remaining land. That damage was caused by the

[3] Section 12, as amended through St. 1959, c. 626, § 4, reads in part, "The damages for property taken under this chapter shall be fixed at the value thereof before the . . . taking, and in case only part of a parcel . . . is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking ·is made . . . . In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ." In *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 137–138, this court pointed out that c. 81, § 7C· (see sentence following point [A], fn. 2) in effect incorporated by reference G. L. c. 79, § 12, as amended, and G. L. (Ter. Ed.) c. 81, § 7. See *Murray Realty, Inc.* v. *Berke Moore Co. Inc.* 342 Mass. 689, 691–693, where, as in the *Webster Thomas Co.* case, §§ 7 and 7C were considered in respect of actual physical injury to real estate adjacent to a limited access highway project.

closing of a part of Howard Road, at a point some 300 feet from his land. That closing itself involved no taking of any land belonging to LaCroix. He had the same convenient access to Howard Road from all parts of his land, except the taken triangular parcel, as he had before, and could use that road as freely in a northerly direction.

Apart from c. 81, § 7C, under our decisions a landowner is not entitled to compensation merely because his access to the public highway system is rendered less convenient, if he still has reasonable and appropriate access to that system after the taking. See *Nichols* v. *Richmond,* 162 Mass. 170, 172–173; *Hyde* v. *Fall River,* 189 Mass. 439, 440. Cf. *Wine* v. *Commonwealth,* 301 Mass. 451, 458. Any claim by LaCroix under § 7C falls because of the language of that section itself. To be sure (see words following point [B], fn. 2), Route 495 was in part laid out "in the location of an existing public way," viz. Howard Road, and LaCroix was an owner of land (see words following point [C], fn. 2) "abutting upon such existing public way." He suffered, however (see words following point [D], fn. 2), no "taking of or injury to . . . [his] easements of access to such public way." Section 7C, as we read it, has absolutely no relevance to LaCroix's situation. Without any benefit of the final sentence quoted (see fn. 2) from § 7C (and in the absence of special and peculiar damage to his remaining land, not the same in kind as that suffered by the general public), the compensable damage to LaCroix's remaining land from taking the triangular parcel (which, prior to the taking, did not abut upon any highway) must be limited to the diminution, if any, in the value of that remaining land caused by the separation of the triangular parcel.

The Commonwealth's requests for rulings (see fn. 1) should have been granted. The charge misapplied § 7C. The opinion of LaCroix and an expert, so far as based upon the severance of Howard Road, described injury for which no compensation is (by § 7C or otherwise) presently allowable.

*Exceptions sustained.*