HENRY A. MALONE & another[1] *vs.* COMMONWEALTH.

Hampden. March 5, 1979. — May 14, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Eminent Domain*; Right to damages. *Way*, Public. *Damages*, Eminent domain.

The plaintiffs in an action under G. L. c. 79, § 12, were not entitled to recover for diminution in the market value of their property allegedly caused by the relocation of a part of a State highway on which the property abutted where the relocation did not landlock the plaintiffs' property nor create a dead-end street, where neither the plaintiffs nor their customers were deprived of vehicular access to the public highway system, and where the plaintiffs retained as much frontage on a connected road as they had previously had on the highway and needed to go only 450 feet in either direction on the connector road to reach the highway. [77-84]

PETITION filed in the Superior Court on April 7, 1970.

The case was tried before *Moriarty*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John W. Spencer*, Assistant Attorney General, for the Commonwealth.

*John J. Egan* for the plaintiffs.

_____

[1] Lydia T. Malone.

KAPLAN, J. The plaintiffs, husband and wife, are own-
ers of property in a rural area in the city of Westfield
improved by a residence and by two buildings in which
they have been operating a gift shop. They commenced an
action in the Superior Court for Hampden County, pursu-
ant to G. L. c. 79, § 12, to recover for "permanent" diminu-
tion in the market value of their property caused, so they
claimed, by the relocation of a part of a State highway on
which the property abutted.[2] A jury, answering special
questions, awarded them $6,200 in damages. The Com-
monwealth appealed, and we transferred the case here on
our own motion. The procedural posture of the appeal is
such that if, on the facts now to be stated, the plaintiffs
have no legal claim, judgment is to enter for the Common-
wealth; otherwise the judgment entered on the verdict
stands.[3] We shall hold for the Commonwealth.[4]

---

[2] In the same action they also claimed damages for an alleged tem-
porary deprivation of access during the period of construction. That
question of temporary injury was put to the jury and they found for
the Commonwealth, apparently because there was evidence that a
travel lane had been provided affording access. The plaintiffs did not
appeal on that phase of the case. Compare n.4 below.

[3] On the plaintiffs' proof regarding the relocation and its physical
and other effects, the Commonwealth contended that the plaintiffs
had suffered no injury of a kind compensable under G. L. c. 79, § 12,
and therefore objected to evidence of permanent damage and to the
submission of the related questions to the jury. The judge received the
evidence and put the questions to the jury on the understanding that
the Commonwealth's appellate rights would be saved. Accordingly the
Commonwealth did not move formally for a directed verdict or judg-
ment notwithstanding the verdict as to the "permanent" part of the
case, and the plaintiffs make no point of this.

[4] The question in the present case is not foreclosed by *Tarka* v.
*Commonwealth*, 360 Mass. 855 (1971) (rescript opinion), where, in
respect to the same highway relocation, we affirmed a judgment under
G. L. c. 79, § 12, upon a general jury verdict for owners of a gas station
adjacent to the property of the current plaintiffs. Although the court
observed that the size of the verdict suggested that there was an award
for "permanent" damages, the Commonwealth had moved generally
for a directed verdict, and the judge's denial of the motion was not
error because there was a basis for a jury verdict for "substantial
temporary obstruction of access" and "[a]ny claim that the damages

The plaintiffs' property consists of twelve acres in Westfield on the border of the town of Southampton. The two nonresidential buildings, formerly used as a hardware store and gas station, were converted in May, 1968, to serve as a gift shop in which the plaintiffs sell pottery, pewter, and other gift items. The former use and the modified current use have been permitted as "nonconforming," the area being now zoned for agricultural use.

Before the relocation, which took place in 1969-1970, the plaintiffs' property fronted for about 700 feet on the easterly side of Route 10, a State highway extending in a generally northerly direction from Connecticut through Hampden County to Hampshire County and Northampton. The distance from the side line of the shop to the margin of the highway was about nine feet. The relocation occurred as part of a project for widening and reestablishing 11,500 feet of Route 10. Some 1,500 feet, including the 700 feet adjacent to the plaintiffs' property, which had been in the form of a curve or crescent, was straightened by means of a new section connecting the terminal points of the curve. The curved portion was rebuilt as a connector road in the shape of a half circle, and it occupied much the same ground as the previous curve.

In the result, the plaintiffs' property abutted on the connector road for the same length that it had abutted on Route 10. The connector road extended for about 450 feet on either side of the plaintiffs' shop before entering at either end into Route 10. The store was now about 215 feet from the center of the reestablished portion of Route 10 and about ten feet higher in grade. Traveling north from Westfield on Route 10, a motorist could first see the gift shop about 210 feet before he reached the turnoff for the connector road (a view of the lower part of the shop, however, was blocked at that point by an embankment). On the approach from Southampton, the line of sight to

were excessive is an issue not presented to us on this record." *Id.* at 856.

the shop was obscured by some trees in the area bounded by Route 10 and the connector road.[5]

There was testimony by a real estate appraiser that, before the relocation, the highest and best use of the plaintiffs' property was for a retail store; now it was for storage. Whereas the fair market value of the residence had increased, the value of the property as a whole had declined (this had resulted in an abatement of property tax). The plaintiffs, however, continued to operate the gift shop.

By G. L. c. 81, § 7, for "injury ... caused to the real estate of any person by the laying out or alteration of a state highway," compensation may be recovered under G. L. c. 79, which provides in § 12 that "[i]n determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel."[6] The language "special and peculiar" came into the statute in 1918

---

[5] The plaintiffs sought permission to remove the trees, but the authorities would not allow it.

[6] The first two sentences of § 12 read as follows: "The damages for property taken under this chapter shall be fixed at the value thereof before the recording of the order of taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made; and there shall be deducted the benefit accruing to the part not taken unless it was stated in the order of taking that betterments were to be assessed. In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel, and there shall be deducted the benefit accruing to such parcel, unless it was stated in the order of taking, or if there was no taking in the order for the establishment, construction, alteration, repair or discontinuance of the public improvement which caused the injury, that betterments were to be assessed."

We need not say whether damages may ever be awarded for traffic diversion in a case where "only part of a parcel of land is taken." Cf. *LaCroix* v. *Commonwealth*, 348 Mass. 652 (1965); *Nichols* v. *Commonwealth*, 331 Mass. 581 (1954). See also *United States Gypsum Co.* v. *Mystic River Bridge Auth.*, 329 Mass. 130 (1952).

See text and n.17 below as to "benefit" and "betterments."

(St. 1918, c. 257, § 187 [12]),[7] but the same limitation had long been recognized by the courts under enactments cast in general terms. Thus in *Smith* v. *Boston*, 7 Cush. 254, 255 (1851), a case of discontinuance of part of a street, the court spoke of "a peculiar and special damage, not common to the public" (per Shaw, C.J.).

The plaintiffs suggest that they have suffered such damage because "[a]ccess to a public way is one of the incidents of ownership of land bounding thereon" (*Anzalone* v. *Metropolitan Dist. Comm'n*, 257 Mass. 32, 36 [1926]), and the relocation here, as they contend, deprived them of all access to Route 10 which could be considered reasonable or suitable, considering the use to which their property was being put.

We have maintained a distinction between, on the one hand, impairment of access which if substantial may figure as special and peculiar injury deserving compensation, and, on the other hand, diversion of traffic which lies outside the compensable category even if it results in a decline in a property's market value. The distinction was suggested in *Smith* v. *Boston, supra* at 257, and taken as well settled in *Stanwood* v. *Malden*, 157 Mass. 17 (1892), again a case of discontinuance of part of a street, where Holmes, J., said, "[I]t is not enough to show that a shop has suffered by the diversion of travel, or that the owner finds travel less convenient at a distance from his place, if the access to the system of public streets remains substantially unimpaired." *Id.* at 19. It was "intelligible"

---

[7] A general requirement of compensation for losses resulting from highway construction was enacted by St. 1786, c. 67, and appeared in the first codification of the General Laws, Rev. Sts. c. 24, § 31 (1836): "In estimating the damages sustained by any person in his property, by the laying out, altering or discontinuing of any highway, the jury shall take into consideration all the damage done to the complainant, whether by taking his property, or by injuring it in any manner; and they shall also allow, by way of set-off, the benefit, if any, to the property of the complainant, by reason of such laying out, alteration or discontinuance." The same general rule appeared as Gen. Sts. c. 43, § 16 (1860), and as Pub. Sts. c. 49, § 16 (1882).

for the Legislature to have acquiesced in an interpretation of the statute which held that "only the loss of access, the comparatively palpable injury, should be paid for, and not the advantage which the landowner had had the luck to enjoy of being where the crowd was; somewhat in the same way that the common law refuses to recognize the damage, often very great even measured in money, caused by cutting off a view." *Id.*

Our decisions have not erred on the side of lenience to claimants in placing situations in the class of actionable deprivations of access. Thus in *Tassinari* v. *Massachusetts Turnpike Auth.*, 347 Mass. 222 (1964), we held that no compensation was due where the street on which the plaintiff's store abutted was closed at one end in order to accommodate the construction of a nearby tunnel, and vehicles visiting the store had to back out the length of the street in order to exit. We recognized that the value of the property had been diminished in consequence of the physical change; still the damage "is not special and peculiar, but . . . the same in kind as that of the general public, although it may be relatively great in degree." *Id.* at 225, quoting from *Hyde* v. *Fall River*, 189 Mass. 439, 440 (1905) (Knowlton, C.J.). In *LaCroix* v. *Commonwealth*, 348 Mass. 652 (1965), the construction of a so called "limited access" highway, one with relatively few entrances, deprived the plaintiff of a direct route which he formerly had to a State road and obliged him to navigate a distance of several miles to reach that road. The plaintiff, a real estate developer, had purchased the property with a view to creating an industrial park, but after the highway construction the property's highest and best use was residential rather than industrial and its value was much reduced. The case, we said, was governed by the principle that "a landowner is not entitled to compensation merely because his access to the public highway system is rendered less convenient, if he still has reasonable and appropriate access to that system after the taking." *Id.* at 657. There have been many decisions on the

same lines.[8] On the other hand, we have allowed compensation where, through abolishing a grade crossing and constructing barriers, the main although not the exclusive route was eliminated from the claimant's loading platform to the public roads. *Betty Corp.* v. *Commonwealth*, 354 Mass. 312 (1968). Of course compensable injury has been found where "barricades . . . [shut] off access to the petitioner's premises from the general system of the public highways of the city." *Wine* v. *Commonwealth*, 301 Mass. 451, 458 (1938).

We do not deal here in absolutes. As indicated, loss of access need not be complete to justify an award; indeed, in any case there will remain some way to reach private property. Circuity of access may be rendered extreme to the point of counting as a substantial impairment of access. See *Sheehan* v. *Fall River*, 187 Mass. 356, 361 (1905). Thus the problem in each case consists of assessing a variety of factors, including most notably the existence, availability, and feasibility of routes, all in connection with the uses to which the property has been (or may be) put, to determine whether the claimant or his patrons, previously in a reasonable relation to a road system reaching the property, have now been left without such a relation. See Van Alstyne, Just Compensation of Intangible Detriment: Criteria for Legislative Modifications in California, 16 U.C.L.A.L. Rev. 491, 512-522 (1969).

We need not recanvass past decisions minutely, or examine whether in particular cases claimants may have been too harshly treated, for the present case fell far

---

[8] See, e.g., *Putnam* v. *Boston & Providence R.R.*, 182 Mass. 351, 353 (1903); *Sawyer* v. *Commonwealth*, 182 Mass. 245, 247 (1902); *Davenport* v. *Dedham*, 178 Mass. 382 (1901); *Nichols* v. *Richmond*, 162 Mass. 170 (1894); *Shaw* v. *Boston & Albany R.R.*, 159 Mass. 597 (1893); *Hammond* v. *County Comm'rs of Worcester*, 154 Mass. 509 (1891); *Davis* v. *County Comm'rs of Hampshire*, 153 Mass. 218 (1891); *Blackwell* v. *Old Colony R.R.*, 122 Mass. 1 (1877); *Fall River Iron Works Co.* v. *Old Colony & Fall River R.R.*, 5 Allen 221 (1862); *Willard* v. *Cambridge*, 3 Allen 574 (1862).

short of the line of liability and involved no such question of doubt as should be put to a jury.[9] The relocation of the section of Route 10 did not landlock the plaintiffs' property; it did not create a dead end street or road; neither the plaintiffs nor their customers were deprived of vehicular access to the public highway system. The plaintiffs had as much frontage on the connector road as they had on Route 10 and they need go only 450 feet in either direction on the connector road to reach Route 10. We may take it that by reason of the relocation the gift shop was less visible from the highway, and a customer seeking to reach the shop must turn off the highway and travel a short distance on another road. Although the diversion of traffic may have caused some retrograde change in the highest and best use of the property, the property remained fully accessible to customers. Thus the loss of value was not compensable under our traditional approach. See *LaCroix* v. *Commonwealth, supra*; *LaBriola* v. *State*, 36 N.Y.2d 328 (1975). On facts like those at bar, numerous jurisdictions would join us in reaching the result portended here.[10]

---

[9] In holding for the defendant in *Stanwood* v. *Malden*, 157 Mass. 17, 19 (1892), Holmes, J., may have been hinting at the need for a rather firm judicial hand in these cases when he said, "[O]ne may doubt whether substantial justice has not been approached most nearly when it has not been a matter of course to leave every nice question of the standards of conduct to a jury."

[10] There was a similar highway relocation in *Bopp* v. *State*, 19 N.Y.2d 368 (1967), and the plaintiff's motel-lodge and restaurant became barely visible from the new highway and no longer profitable. The property was converted from its former highest and best use to residential use. A property owner, said the court, "has no right to be located directly on a State highway nor does he have a right to have traffic pass in front of his property." *Id.* at 372. When "the State has determined that it would be in the public interest to construct a new and modern highway, capable of providing safer and speedier travel than the old route, the claimants may not complain. The State's obligation to them is fulfilled if they have a reasonably adequate means of access to and from the new highway." *Id.* at 373. See *People ex rel. Dep't of Pub. Works* v. *Romano*, 18 Cal. App. 3d 63 (1971); *People ex rel. Dep't of Pub. Works* v. *Becker*, 262 Cal. App. 2d 634 (1968); *Common-*

Argument not without some persuasive force has been offered for extending compensation for changes of traffic patterns not so drastic as to amount to deprival of "access," but nevertheless causing material injury to the values of particular properties;[11] and there may be argument in a more general sense for going beyond the conventional legal boundary to cover a range of "intangible" private losses incident to carrying out public projects.[12] Economic "efficiency" would be served, it may be said, by a rule requiring payment for the variety of such losses, since that would impel careful consideration of the true total social costs of these projects before they were launched.[13] Such an approach would be consistent with a fundamental notion of the law of eminent domain, that when governmental activity is intended to benefit the generality of people, it is the public, not particular citizens out of the mass, who should bear the costs. It seems not an entirely satisfactory answer, although often given, to say that costs of this type tend to even out over time,

wealth, Dep't of Highways v. Wooton, 507 S.W.2d 451 (Ky. Ct. App. 1974); Flynn v. Commonwealth, Dep't of Highways, 428 S.W.2d 24 (Ky. Ct. App. 1968); Recke v. State, 298 Minn. 500 (1974); LaBriola v. State, 36 N.Y.2d 328 (1975); Hession Condemnation Case, 430 Pa. 273 (1968), cert. denied, 393 U.S. 1049 (1969); Heil v. Allegheny County, 330 Pa. 449 (1938); South Carolina State Highway Dep't v. Carodale Assocs., 268 S.C. 556 (1977); Stefan Auto Body v. State Highway Comm'n, 21 Wis. 2d 363 (1963). See generally 4A Nichols, Eminent Domain § 14.244[4] (3d rev. ed. 1976), and cases cited; Annot., 42 A.L.R. 3d 13 (1972). But cf. Underwood v. State, 40 App. Div. 2d 749 (N.Y. 1972); State Highway Comm'n v. Peters, 416 P.2d 390 (Wyo. 1966). So long as reasonable access is available, a change in grade as in the present case is not compensable. See Bopp v. State, supra.

[11] See Comment, Traffic Oriented Business and Highway Vacations: A Diversion, 30 U. Pitt. L. Rev. 671 (1969).

[12] Cf. B.A. Ackerman, Private Property and the Constitution, c. 6 (1977).

[13] See Van Alstyne, Just Compensation of Intangible Detriment: Criteria for Legislative Modifications in California, 16 U.C.L.A.L. Rev. 491, 520-521 (1969); cf. Michelman, Property, Utility and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law, 80 Harv. L. Rev. 1165, 1193-1196 (1967).

or to assume that they are regularly and reliably discounted in the market prices of the affected properties.[14] Cf. *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684, 686-687 (1972).

However, we have everywhere about us instances of particular injuries following upon governmental action which by common understanding are not expected to be paid for out of the public treasury: the owners of liquor dispensing establishments could not claim compensation if a law raising customers' age qualifications should be proved to reduce their receipts and put their businesses at a continuing commercial disadvantage in relation to their competitors across the State border. See *Felix* v. *Milliken*, 463 F. Supp. 1360, 1386 (E.D. Mich. 1978). General acceptance that such losses should lie where they fall derives, we are told, from an intuitive or lay perception about the attributes of private property; in that view, traffic flow would not be thought of as property.[15] Thus it is only "loss of access, the comparatively palpable injury" (*Stanwood* v. *Malden, supra* at 19) that makes an appeal for recovery. The effort, moreover, to identify the comparatively impalpable injuries inflicted by highway relocations or other projects, and to settle or litigate the claims, would involve an expense that might run so high as unduly to discourage the projects in the first instance.[16] And if efficiency and equity were thought served by re-

---

[14] For views on that assumption, compare *Sears* v. *Street Comm'rs of Boston*, 180 Mass. 274, 282 (1902) (Holmes, C.J.), *Davis* v. *County Comm'rs of Hampshire*, 153 Mass. 218, 225 (1891), and R. Posner, Economic Analysis of Law 41 n.1 (1977), with Michelman, *supra* at 1241 n.131, and Mayberry & Aloi, Compensation for Loss of Access in Eminent Domain in New York: A Re-evaluation of the No-Compensation Rule with a Proposal for Change, 16 Buffalo L. Rev. 603, 645-646 (1967).

[15] See B.A. Ackerman, *supra* at 133-134.

[16] See *Bacich* v. *Board of Control*, 23 Cal. 2d 343, 380 (1943) (Traynor, J., dissenting); B.A. Ackerman, *supra* at 45-46; Michelman, *supra* at 1214. Cf. Verbit, The Urban Transportation Problem, 124 U. Pa. L. Rev. 368, 464 n.396 (1975).

quiring the public to make good the incidental private detriments attendant on public improvements, then it might be considered inefficient and inequitable not to require private contributions to the public treasury to the extent of the corresponding benefits resulting from the improvements. Yet to exact such contributions, especially from property owners who profess to prefer not to receive the benefits, would appear quite awkward; whereas to forgo the exactions, while requiring the government to pay the private costs, might tend again to deter useful public improvement projects.[17]

So it is understandable that the Legislature should have acquiesced over a very long period of time in the limitation of liability established by the courts despite its somewhat arbitrary delineation.

The judgment entered below will be vacated and judgment will enter for the Commonwealth.

*So ordered.*

---

[17] Under G. L. c. 80, § 1, a State or municipal board may impose betterment assessments when "a limited and determinable area receives benefit or advantage, other than the general advantage to the community" from public improvements. Such assessments have been levied upon a broader class of landowners than must be compensated for "special and peculiar" injury under G. L. c. 79, § 12. See *Sears* v. *Street Comm'rs of Boston, supra;* cf. *Seiler* v. *Board of Sewer Comm'rs of Hingham,* 353 Mass. 452 (1968). The assessment, however, is in the amount of the proportionate share of the cost of the improvement, not the increase in the market value of favorably affected property. In any event there is no suggestion that betterments have been assessed to abutting landowners for State highway construction.

Note the text of § 12 (n.6 above) as to "benefit" and "betterments."