## Sorenti Brothers, Inc. *vs.* Commonwealth.

Barnstable. January 9, 2014. - May 19, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Eminent Domain,* Damages, Extent of taking. *Damages,* Eminent domain. *Way,* Public: access. *Practice, Civil,* Eminent domain proceeding, Instructions to jury.

In a civil action seeking damages from the Commonwealth on account of the temporary and permanent land takings that the Commonwealth made in connection with the Sagamore Bridge Flyover Project, the judge erred in submitting to the jury the plaintiff's claim for damages under G. L. c. 81, § 7C, where the land owned by the plaintiff did not abut upon the existing public way (i.e., the Sagamore traffic rotary) over which the new limited access highway was laid out [192-197]; further, the judge erred in instructing the jury that they might award damages under G. L. c. 79, § 12, where, as a matter of law, the fact that travel to the parcel from the new limited access highway involved a more circuitous route did not rise to the level of a substantial impairment, given that the parcel still retained reasonable access to the network of public ways near it and, in particular, the public highways that formerly connected to the rotary [197-200].

Civil action commenced in the Superior Court Department on September 26, 2006.

The case was tried before *Christopher J. Muse,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John E. Bowen,* Assistant Attorney General (*Joseph Callanan,* Assistant Attorney General, with him) for the Commonwealth.

*Nelson G. Apjohn* (*Robyn Smith Maguire* with him) for the plaintiff.

Botsford, J. This eminent domain case involves the Sagamore Bridge Flyover Project (flyover project) in Bourne that, among other changes, eliminated the Sagamore traffic rotary (rotary) just north of the bridge. The plaintiff, Sorenti Brothers,

Inc. (Sorenti), owns parcels of land near the former rotary; it operates a gasoline station on one of them. Sorenti commenced this action in the Superior Court, seeking damages from the Commonwealth on account of the temporary and permanent land takings that the Commonwealth made in connection with the flyover project. At the conclusion of a jury trial, judgment entered awarding Sorenti almost $3 million in damages. The Commonwealth appealed, and the Appeals Court, in an unpublished memorandum and order issued pursuant to its rule 1:28, affirmed. *Sorenti Bros., Inc.* v. *Commonwealth*, 82 Mass. App. Ct. 1123 (2012). The case is before us on further appellate review.

At issue is the applicability of G. L. c. 81, § 7C (§ 7C),[1] to Sorenti's gasoline station parcel (Shell parcel), and whether the elimination of a portion of Canal Street as part of the flyover project resulted in a substantial, and compensable, impairment of access to that parcel. We conclude that (1) under § 7C, for a property owner to be entitled to damages on account of the construction of a limited access highway, the highway must be constructed in whole or in part over the public way on which the owner's property directly fronts or abuts; and (2) under G. L. c. 79, § 12 (§ 12), when a partial taking of property has been made, the property owner is entitled to recover damages for loss of access to the remainder of the property only where that loss or impairment is severe. Because the flyover project was not laid over a public way that directly abutted Sorenti's property, Sorenti was not entitled to recover damages under § 7C as a matter of law. Similarly, in the circumstances of this case, Sorenti was not entitled to impairment of access damages under § 12 because it still retains reasonable and appropriate access to and from the Shell parcel. The trial judge's instructions erroneously permitted the jury to award damages in part for impairment of access under both §§ 7C and 12. Accord-

---

[1]General Laws c. 81, § 7C (§ 7C), provides for the laying out of limited access highways by the Department of Highways; a limited access highway is one where access to the highway itself occurs only at designated points rather than anywhere along the length of the road. When a limited access highway is laid out in the location of an existing public way, § 7C entitles owners of property abutting that public way to recover damages for "the taking of or injury to their easements of access to" it.

ingly, we vacate the judgment of the Superior Court and remand the case for a new trial.

1. *Background.* The flyover project eliminated the rotary and extended State Routes 3 and 6 over the Sagamore bridge by constructing a new limited access highway. To accomplish this result, the Commonwealth made eminent domain takings from a number of property owners in the vicinity of the rotary, including Sorenti. This case involves two parcels of land owned by Sorenti: the Shell parcel, containing a Shell brand gasoline station and a convenience store; and "the undeveloped parcel," a vacant, commercially zoned piece of land.

Before the flyover project, the Sorenti property was bounded on the west by Canal Street, a State road, and on the north and east by Meetinghouse Lane, a town of Bourne road.[2] The Shell parcel had access to Canal Street by a curb cut, and Canal Street in turn connected directly to the east side of the rotary; the rotary connected to Route 3 on the north, Route 6 (Mid-Cape Highway) on the south, and the Scenic Highway on the west. The Shell parcel also had access to Meetinghouse Lane by a curb cut, and Meetinghouse Lane, like Canal Street, connected directly to the rotary. Cars traveling on any of the three highways feeding into the rotary could turn from the rotary onto either Canal Street or Meetinghouse Lane and then quickly enter the Shell parcel by driveways leading to the gasoline station. As part of the flyover project, Canal Street was relocated,[3] and although the Shell parcel had access to the relocated Canal Street, its access was at a point different from where it was before the project and, in any event, the flyover project eliminated the rotary and Sorenti's direct access, via Canal Street and the rotary, to the system of highways of which the rotary was a part. The Sorenti property still has access to the three highways (Routes 3 and 6, and the Scenic Highway) after the completion

[2]Set forth as an Appendix to this opinion are slightly modified but faithful reproductions of trial exhibits that contain separate diagrams of the configuration of the Sagamore rotary and connected public ways and highways before the Sagamore Bridge Flyover Project (flyover project) and of the public way and highway system after completion of the flyover project.

[3]The relocated Canal Street was cut through a portion of the undeveloped parcel that the Commonwealth took in fee in connection with the flyover project.

of the flyover project, but one must drive a somewhat more circuitous and longer route to reach those highways from the property.[4]

In September, 2006, Sorenti filed its complaint in the Superior Court, seeking damages associated with all the takings effected by the Commonwealth in connection with the flyover project. Among other claims, Sorenti maintained that the loss of access to Canal Street and thereby to the highway network formerly connected to the rotary caused a significant diminution in value to the Shell parcel. After a jury trial, Sorenti received a general verdict in its favor on all its damages claims in the amount of $4.15 million; after subtraction of the pro tanto payment of $1.7 million earlier made by the Commonwealth, judgment entered for $2,954,561.42, including interest and costs.

2. *Discussion.* We turn to the two issues the Commonwealth has raised in its application for further appellate review.[5]

a. *Applicability of G. L. c. 81, § 7C.* Section 7C provides in pertinent part:

> "If the department [of highways] determines that public necessity and convenience require that a limited access way shall be laid out, it shall lay out such way in the same manner as state highways. A limited access way is hereby defined to be a highway over which the easement of access in favor of abutting land exists only at such points and in such manner as is designated in the order of laying out. . . . *If a limited access way is laid out in whole or in part in the location of an existing public way, the owners of land abutting upon such existing public way shall be entitled to recover damages under [c. 79] for the taking of*

---

[4]The Shell parcel's access to Meetinghouse Lane did not change as part of the flyover project. Meetinghouse Lane, however, obviously no longer connects directly to the (now eliminated) rotary. It is possible to go from Meetinghouse Lane to the highway system, but less directly than was the case before the flyover project.

[5]Before the Appeals Court, the Commonwealth argued a number of issues focused on Sorenti's damages claims relating to the undeveloped parcel. Although the Appeals Court rejected the Commonwealth's arguments, the Commonwealth has not sought further review of these issues, and therefore we do not consider them. See Mass. R. A. P. 27.1 (b), as amended, 416 Mass. 1602 (1994).

> *or injury to their easements of access to such public way"*
> (emphasis added).

There is no dispute that the flyover project created a limited access highway as defined in § 7C that runs north to south directly over where the rotary previously had been, and Sorenti specifically agrees with the Commonwealth that the limited access highway so created includes only Routes 3 and 6. In the Superior Court, Sorenti contended that it was entitled to recover damages pursuant to § 7C because the flyover project as a whole eliminated the existing Canal Street at the point that the Shell parcel abutted it, and this loss of access to Canal Street constituted an "injury to [Sorenti's] easement of access" to a public way that was compensable under this statute. The trial judge agreed in substance and, over the Commonwealth's objection, recited the language of § 7C to the jury as part of his final instructions. We disagree.

As the Commonwealth points out, and as this court set out in *LaCroix* v. *Commonwealth*, 348 Mass. 652 (1965), § 7C contains a number of discrete conditions that must be met by a property owner claiming an entitlement to damages under the statute. In particular, § 7C requires that (1) a limited access highway be "laid out in whole or in part" (2) "in the location of an existing public way"; (3) the land or property owned by the claimant "abut[] upon such existing public way"; and (4) the claimant must have suffered a "taking of or injury to [its] easements of access to such public way" (emphasis omitted). See *LaCroix*, *supra* at 655 n.2, quoting § 7C. Here, the new limited access highway extends directly over the location of the now former rotary, which, all agree, qualified as "an existing public way." But before the flyover project, the Shell parcel did not directly abut or front on the rotary. Rather, the Shell parcel abutted only Canal Street and Meetinghouse Lane, and while both of these ways led to the rotary, neither of them is included in the new limited access highway, which encompasses only Routes 3 and 6.[6] Accordingly, we agree with the Commonwealth that Sorenti, by definition, cannot meet the third requirement of § 7C.

---

[6]The portion of Canal Street that led directly to the rotary no longer exists; a commuter parking lot has been constructed where that portion of the street formerly was located. See Appendix.

Sorenti argues against this conclusion by referencing the fly-over project's "layout plan" that governed the over-all flyover project and specifically the layout and construction of the new limited access highway, pointing out that the layout plan covered the area immediately around the rotary, including Canal Street. Accordingly, the argument goes, because Canal Street is included within the layout plan and the Shell parcel abutted the relevant portion of Canal Street, Sorenti qualifies as an "owner[] of land abutting upon" an "existing public way" within the meaning of § 7C, and is entitled to damages for the injury sustained to its "easement of access" to Canal Street and the system of public ways to which it connected.

The argument fails. A property owner's entitlement to seek damages under § 7C requires that the limited access highway be "laid out" in the same location as an existing public way. "Laid out," as the past tense of "lay out," has a technical meaning in the highway context. See G. L. c. 4, § 6, Third (in interpreting statutes, "technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such meaning"). " 'Laying out' is, and has been from the earliest times, the appropriate expression for locating and establishing a new highway," and involves "ascertain[ing] the place and course of said road." *Foster* v. *Board of Park Comm'rs of Boston*, 133 Mass. 321, 329 (1882) (citations and quotations omitted). See *Leahy* v. *Street Comm'rs of Boston*, 209 Mass. 316, 317 (1911) ("to lay out" means "to fix the termini and prescribe the boundaries of the highway"). See also *Crawford* v. *Bridgeport*, 92 Conn. 431, 436 (1918) ("To lay out a highway is to locate it and define its limits"). Here, the new limited access highway was laid out in the "location"[7] only of the rotary, not the location of Canal Street (or Meetinghouse Lane). See note 6, *supra.* Although the Commonwealth's layout plan for the flyover project included Canal Street and encompassed an area larger than the

---

[7]"Location" is defined as "[t]he specific place or position of a person or a thing." Black's Law Dictionary 1024 (9th ed. 2009). Accord Webster's Third New International Dictionary 1327 (1993) (defining "location" as "a position or *site occupied*").

rotary, the scope of the layout plan is not relevant to a determination of the proper scope of § 7C: by its terms, § 7C is concerned only with the location of the limited access highway itself.

Sorenti points to this court's decision in *Nichols* v. *Commonwealth*, 331 Mass. 581 (1954), as supporting the contention that § 7C damages are available in relation to the Shell parcel. In *Nichols*, we stated:

> "[Section 7C] clearly provides that if a limited access highway is laid out in the location of an existing public way, the owner of land abutting upon such existing way shall be entitled to recover damages for the taking of or injury to his access to such public way or to such new highway. By these provisions the Legislature plainly established that any impairment or deprivation of access which an owner formerly had to a public way may so affect the value of the remainder of the land not taken as to be compensable in damages to be recovered under c. 79, § 12."

*Id.* at 584-585. Focusing on Canal Street as a public way "in the location of" the new limited access highway, Sorenti contends that the quoted passage from *Nichols* entitles it to recover damages under § 7C because the deprivation of access from the Shell parcel to Canal Street (and thereby to the rotary) has materially diminished the parcel's value, for which the Legislature clearly intended Sorenti should be compensated. This interpretation of *Nichols* is flawed; the case must be read and understood in the context of its facts. In *Nichols*, the Commonwealth made takings of property, including a portion of the plaintiffs' land in Danvers, to construct a limited access highway that was located in part over an existing public way, the Newburyport Turnpike, on which the plaintiffs' property fronted (i.e., abutted), and in part over the plaintiffs' property. *Id.* at 582. Before the limited access highway was built, the plaintiffs had unrestricted access to the Newburyport Turnpike from the portion of their property that fronted on the turnpike; after construction, the plaintiffs' access to the new limited access highway was indirect and "by a difficult route." *Id.* at 582. On these facts, and consistent with the interpretation of § 7C we adopt here, the court in *Nichols* concluded that the plaintiffs were

entitled to recover damages under § 7C because (1) before construction, they had directly abutted the public way (the Newburyport Turnpike), (2) over which the new limited access highway was constructed (i.e., "laid out"), *id.* at 582, and (3) the result of the construction was that the plaintiffs suffered "impairment of and injury to their former access to the public way," *id.* at 585. Accord *Wenton* v. *Commonwealth*, 335 Mass. 78, 79-81 (1956) (involving plaintiffs whose property directly abutted public way that was itself converted into limited access highway).[8] See *LaCroix*, 348 Mass. at 652, 654, 657.[9] Here, Sorenti's Shell parcel does not front on or abut the public way over which the limited access flyover highway is built. Accordingly, as was true of the plaintiff in *LaCroix* (but for somewhat different reasons), "[a]ny claim by [Sorenti] under § 7C falls because of the language of that section itself." *Id.* at 657. The

---

[8]*Wenton* v. *Commonwealth*, 335 Mass. 78, 79 (1956), concerned a 1953 State highway project that converted an existing State highway, Route 2, into a limited access highway. The plaintiffs owned property directly fronting on Route 2 and had a "formal" right of access to Route 2 via a driveway from their property to the highway — a right that could be exercised upon obtaining the appropriate permit from Commonwealth. *Id.* at 79-80. The 1953 layout, however, eliminated all the plaintiffs' rights of access to Route 2, formal or otherwise. *Id.* The court concluded that although the plaintiffs had not exercised their right of formal access by seeking a permit to connect a driveway to Route 2 before the 1953 project, the right nonetheless existed, and they were entitled under § 7C "to recover the damage to what remained of their real estate after the appurtenant easement had been taken away from it and as a result of losing the easement. . . . Nothing turns on the fact that the [plaintiffs'] acreage was the same as before the taking." *Id.* at 80-81 (citations omitted).

[9]In *LaCroix* v. *Commonwealth*, 348 Mass. 652, 652-654 (1965), the court considered a property owner's claim for damages under § 7C due to the construction of Route 495 as a limited access highway over a portion of Howard Road, a public way that the plaintiff's property directly abutted. The court concluded that the plaintiff satisfied the requirements of § 7C that the limited access way be laid out in the location of an existing public way, viz., Howard Road, and the plaintiff be a property owner of land abutting that public way. *Id.* at 657. However, the court further concluded that the plaintiff was not entitled to recover damages under § 7C because in the particular circumstances, the construction of Route 495 over a portion of Howard Road below the plaintiff's property did not cause him any "injury to . . . [his] easements of access" — the fourth requirement of § 7C — to Howard Road: his access to Howard Road itself was the same before and after the highway construction. *Id.*

trial judge erred in submitting to the jury Sorenti's claim for damages under § 7C.

b. *Substantial impairment of access damages.* At trial, over the Commonwealth's objection, the judge, focusing on G. L. c. 79, § 12,[10] instructed the jury that Sorenti would be entitled to damages for loss of access if the jury concluded that there was a substantial impairment of access, and distinguished between a mere "diversion in traffic" on the one hand, and "extreme" "circuity of access" on the other. See *Malone* v. *Commonwealth,* 378 Mass. 74, 78, 80 (1979). The Commonwealth contends that, as a matter of law, Sorenti was not entitled to seek damages under § 12 based on a claim of substantial impairment of access to and from the Shell parcel. In the Commonwealth's view, because there is still reasonable access to the Shell parcel from both the relocated Canal Street and Meetinghouse Lane, Sorenti has no valid basis for a damages claim for impairment of access. We agree.

Section 12 sets out three different instances in which eminent domain damages are to be awarded: (1) when an owner's entire property is taken; (2) when part of the owner's property is taken; and (3) when no part of the property is taken but there is special and peculiar injury to the owner as a result of other takings or a public improvement project. Sorenti does not dispute that the second instance, namely, a partial taking, is at issue in this case. There is no question that in connection with the flyover project the Commonwealth took in fee a very small por-

---

[10]General Laws c. 79, § 12 (§ 12), provides in pertinent part:

> "The damages for property taken under this chapter shall be fixed at the value thereof before the recording of the order of taking, and *in case only part of a parcel* of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made; and there shall be deducted the benefit accruing to the part not taken unless it was stated in the order of taking that betterments were to be assessed. In determining the damages to a parcel of land injured *when no part of it has been taken*, regard shall be had only to such injury as is special and peculiar to such parcel, and there shall be deducted the benefit accruing to such parcel, unless it was stated in the order·of taking, or if there was no taking in the order for the establishment, construction, alteration, repair or discontinuance of the public improvement which caused the injury, that betterments were to be assessed" (emphasis added).

tion of the Shell parcel, as well as a much larger portion of the undeveloped parcel.

Where a portion of a parcel is taken, § 12 entitles the landowner to damages for "all injury to the part not taken caused by the taking or by the public improvement for which the taking is made." See *Roman Catholic Bishop of Springfield* v. *Commonwealth*, 378 Mass. 381, 385 (1979) (landowner entitled to "all incidental effects of the public improvement which impair the value of the property"). Coming within this provision of § 12, however, does not help Sorenti here, because not every detrimental effect of a public improvement project qualifies as a compensable injury. See 4A J.L. Sackman, Nichols on Eminent Domain § 14.03[2] (3d ed. 2013) (Sackman). See also *LaCroix*, 348 Mass. at 657. Although landowners have "a legal right of access to the general system of public streets," they do not have a right to have a "particular route remain in its original configuration." *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. 105, 109 (1992). See Sackman, *supra* at § 14.02[2][b][1]. "[U]nder our decisions[,] a landowner is not entitled to compensation merely because his access to the public highway system is rendered less convenient, if he still has reasonable and appropriate access to that system after the taking." *LaCroix*, *supra* at 657. See Sackman, *supra* at §§ 14.02[2][b][i] ("a mere change in access that leaves the landowner with reasonable access is not compensable"), 14A.01[6][a].

"We do not deal here in absolutes," and a total loss of access is not required for damages to be awarded. *Malone*, 378 Mass. at 80. Nevertheless, ascertaining whether damages for loss of access are compensable requires consideration of the particular facts presented by the case. Sorenti principally laments the elimination of Canal Street as it existed while the rotary was still in place; in essence, it complains that all the public roads are not configured in the same manner as they were before the flyover project and the connected takings. Sorenti, however, does not have a right to the pre-taking roadway configuration. See *Miczek*, 32 Mass. App. Ct. at 109. See also *Stanwood* v. *Malden*, 157 Mass. 17, 19 (1892) ("the advantage which the landowner had [of having] the luck to enjoy . . . being where the crowd was" is not compensable injury). Notwithstanding

that a portion of the original Canal Street was eliminated, the Shell parcel retains access to the relocated Canal Street as well as to Meetinghouse Lane.[11] Meetinghouse Lane, in turn, connects to Route 3A and the Scenic Highway, both of which permit motorists to gain access to Routes 3 and 6.

"The relocation of [Canal Street and the creation of the rotary flyover] did not landlock the plaintiff['s] property; it did not create a dead end street or road; neither the plaintiff[] nor [its] customers were deprived of vehicular access to the public highway system." *Malone*, 378 Mass. at 81. Instead, what the record shows is that the Shell parcel retained reasonable and appropriate access to the nearby public ways and the public highway system.

Impairments of access similar to those sustained by the Shell parcel have been held to be noncompensable. In *LaCroix*, 348 Mass. at 652-654, Howard Road, the road on which the plaintiff's property abutted, became a dead-end street when Route 495 was built. As a result of the elimination of that portion of Howard Road, reaching one of the, if not the, major roadways in the area, to which the plaintiff formerly had easy access, required several miles of circuitous travel. *Id.* at 654. Even though the plaintiff was left with a dead-end street and more circuitous travel, the court concluded that damages could not be awarded for the change in Howard Road. *Id.* at 657. See *Tassinari* v. *Massachusetts Turnpike Auth.*, 347 Mass. 222, 224-225 (1964) (plaintiff denied compensation where street on which plaintiff's business was located was closed at one end, requiring delivery trucks to back out onto street).

The limitations on access to the Shell parcel that result from the flyover project do not approach the severity that has been found to justify damages for impairment of access. See, e.g., *Tarka* v. *Commonwealth*, 360 Mass. 855, 855-856 (1971) (plaintiff entitled to damages resulting from complete obstruction of gasoline station entrance for six months during construction); *Betty Corp.* v. *Commonwealth*, 354 Mass. 312, 318-319 (1968) (plaintiff entitled to damages because barricades cut off travel to its land and wholly deprived it of use of loading plat-

---

[11]As a result of the flyover project, Sorenti's property also has access to Commercial Drive and the relocated Canal Street.

form, essential to its business);[12] *Wine* v. *Commonwealth*, 301 Mass. 451, 457-458 (1938) (plaintiff entitled to damages where placement of barricades at entrance of road on which plaintiff's business abutted cut off plaintiff's access to public highways in city). Here, in contrast, during the construction process and currently, Sorenti and its customers had, and continue to have, access to the Shell parcel and the gasoline station on it.

In sum, the Shell parcel still retains reasonable access to the network of public ways near its property and, in particular, to the public highways that formerly connected to the rotary. Although travel to the Shell parcel from the new limited access flyover highway or from the parcel to the new highway involves a more circuitous route, we conclude that as a matter of law, it does not rise to the level of a substantial impairment that could be found to entitle Sorenti to § 12 damages.[13] The judge erred in instructing the jury that they might award damages for substantial impairment of access to the Shell parcel.

3. *Conclusion.* Because Sorenti was not entitled to damages under § 7C or based on its impairment of access under § 12, the case must be remanded to the Superior Court for a new trial. At trial, there were a number of discrete damages claims at issue. The Commonwealth made a pro tanto payment intended to cover all of Sorenti's damages. At trial, Sorenti argued that this

---

[12]*Betty Corp.* v. *Commonwealth*, 354 Mass. 312 (1968), on which Sorenti relies, is distinguishable from this case. In concluding that the plaintiff, Betty Corporation (Betty), was entitled to impairment of access damages, the court stated that the barrier erected on that street "deprived [Betty] of access, even for travel, to its land within Western Avenue between the barriers," and "it was deprived of reasonable use . . . for trucks of the old loading platform." *Id.* at 318. Thus, the barriers in *Betty Corp.* completely blocked off Betty's property from the public way at issue and prevented reasonable use of the loading dock which was an essential component to its business. *Id.* By contrast, the elimination of the portion of Canal Street did not eliminate access to the Shell parcel for Sorenti or, probably more to the point, for Sorenti's gasoline station customers. See *Malone* v. *Commonwealth*, 378 Mass. 74, 80 (1979).

[13]Because we conclude that the Shell parcel still maintains reasonable and appropriate access and, therefore, that the injury is not compensable, we do not need to decide whether, where there is a partial taking of property within the meaning of the first sentence of § 12 and the owner asserts damages under a substantial impairment of access theory, the injury to the property not taken must be "special and peculiar." See *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. 105, 109 n.5 (1992). See also *Roman Catholic Bishop of Springfield* v. *Commonwealth*, 378 Mass. 381, 386-387 (1979).

amount was inadequate and, in addition its claims for damages for impairment of access under §§ 7C and 12, sought damages related to both the Commonwealth's present takings and temporary takings, including restoration costs. Sorenti may present these other damages claims on retrial. Further, at the new trial, use of a special verdict pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), may be appropriate in order to identify the claims on which any awards of damages are made, and the basis or bases of such awards. The judgment is vacated, and the case is remanded to the Superior Court for a new trial consistent with this opinion.

*So ordered.*