COMMONWEALTH *vs.* BOSTON REDEVELOPMENT AUTHORITY.

Suffolk. May 5, 1994. - May 31, 1994.

Present: WILKINS, ABRAMS, NOLAN, O'CONNOR & GREANEY, JJ.

*Courthouse. Redevelopment of Land. Urban Renewal. Redevelopment Authority. Commonwealth*, Real property, Contracts, Construction of courthouse. *Real Property*, Restrictions, Covenant running with the land. *Words*, "A health, welfare and education building."

In a proceeding brought by the Commonwealth seeking declaratory judgment concerning various rights and obligations with respect to its proposed construction of a courthouse on a portion of a parcel of land it had purchased in 1965 from the Boston Redevelopment Authority (BRA) under the terms of a Land Disposition Agreement (LDA) devoting that portion of the parcel to a "health, welfare and education service center," this court concluded that the BRA retained the authority to enforce the covenants in the LDA with respect to the use of the parcel, that the parties would have to agree to amend the LDA in order to allow a courthouse to be constructed, and further, if the LDA were amended to allow the proposed use the purchase price of the land need not be recalculated, however any unexpected expenses incurred in the revision of the LDA appeared to be reimbursable to the BRA. [32-36]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 14, 1994.

The case was reported by *Nolan*, J.

*Stuart T. Rossman*, Assistant Attorney General (*Stephen Dick & Catherine C. Ziehl*, Assistant Attorneys General, & *Jamie Lewis Keith* with him) for the Commonwealth.

*Saul A. Schapiro* (*S. Stephen Rosenfeld* with him) for the defendant.

WILKINS, J. The Commonwealth proposes to construct a Suffolk County courthouse on land it owns on New Chardon Street in Boston within the Government Center Urban Re-

newal Area created in 1963.[1] The land is a portion of a parcel, known as parcel 1A, which the Commonwealth purchased from the Boston Redevelopment Authority (BRA) in February, 1965.[2] The Commonwealth agreed with the BRA at that time, pursuant to a Land Disposition Agreement (LDA), to devote parcel 1A to public office and institutional uses, more specifically to construct "a health, welfare and education service center which shall consist of (1) a mental health center and state laboratories building, (2) an employment security building, and (3) a health, welfare and education building." The first two buildings (the Charles F. Hurley Employment Building and the Erich Lindemann Mental Health Center) were constructed in 1971. The third building, planned as a health, education, and welfare office building,

---

[1]The proposed courthouse, having between 380,000 and 420,000 gross square feet, would house the Boston Juvenile Court, the Suffolk County Housing Court, the Land Court, the Suffolk County Probate and Family Court, the Suffolk County Registry of Deeds, and administrative office space for the Trial Court and would have parking for one hundred vehicles. The plan is for the building to have eighteen courtrooms.

[2]The BRA conveyed parcel 1A to the Government Center Commission. That commission ceased operations in 1975, and parcel 1A then came under the control of the Bureau of Building Construction (St. 1969, c. 704, § 3; St. 1975, c. 311), which in 1980 became the Division of Capital Planning and Operations (St. 1980, c. 579). The undeveloped portion of parcel 1A was declared surplus to State need in 1986. We shall refer to the owner of the property since 1965 as the Commonwealth.

A report of the Government Center Commission for the fiscal period July 1, 1962, to June 29, 1963, states concerning parcel 1A (and parcel 1B, an abutting, uncleared parcel):

> "The site of the Health, Welfare and Education Center is in the area bounded by Cambridge, Staniford, Merrimac and Chardon Streets. The Commission was authorized by Section 6 of Chapter 635 of the Acts of 1960 to either take the land by eminent domain proceedings or acquire it by purchase from the Boston Redevelopment Authority. Cost estimates studied by the Commission indicated it would be far more costly to take the land and clear it than it would be to purchase it from the Authority after it had been included in their Urban Renewal Project."

The BRA sold parcel 1A to the Government Center Commission for $1,675,000.

has not been built. The land on which the proposed court-house would be built is vacant and is used as a parking lot.

In October, 1993, after the Commonwealth had under-taken preliminary efforts toward the construction of the courthouse, the BRA sent the Commonwealth a notice of de-fault under the LDA. The default notice was based on the alleged failure of the Commonwealth, as redeveloper, to con-struct the health, welfare, and education building within a reasonable time and in accordance with plans to be submit-ted as required by the LDA. On December 8, 1993, the board of directors of the BRA made "a final determination that the Commonwealth of Massachusetts is in default of the terms and condition of the [LDA] and [the 1965 deed]" and authorized counsel to commence proceedings to assure that the Commonwealth complies with its obligations with respect to parcel 1A.

The Commonwealth brought this declaratory judgment proceeding in the Supreme Judicial Court for the county of Suffolk, seeking various determinations concerning its rights and obligations with respect to the proposed courthouse. The parties have essentially agreed on the underlying facts by ad-missions in their pleadings and through a stipulation as to various documents. A single justice of this court reserved and reported the case to the full court. The parties have stated the issue to be whether, in order to construct the courthouse lawfully, the Commonwealth must obtain the assent of the BRA to depart from the agreements the Commonwealth made in 1965 and whether the Commonwealth must agree to a readjustment of the acquisition price it paid for parcel 1A. The BRA has no objection to the construction of a court-house on the land, if modifications of the original agree-ments, including the amount of the purchase price of parcel 1A, are agreed upon.[3]

---

[3]The Government Center Urban Renewal Plan provides that all design proposals are subject to design review, comment, and approval by the BRA prior to the commencement of construction. The BRA may modify the Government Center Urban Renewal Plan as to parcel 1A, with the consent of the Commonwealth as redeveloper. Use of parcel 1A for courthouse

1. The Commonwealth first argues that it is free to proceed with the construction of the courthouse because it owns parcel 1A in fee simple and the BRA retained no interest in the property. It is doubtful that the Commonwealth would be free of all obligations to the BRA even if this argument were correct, but it is not correct. The BRA retained enforceable rights concerning the way in which the Commonwealth would use parcel 1A.

The deed from the BRA to the Commonwealth states in part:

> "This conveyance has the benefit of and is made subject also to the additional terms and conditions set forth in a Land Disposition Agreement executed on February 2, 1965 by and between the grantor and the grantee hereto, recorded herewith, to the extent such terms and conditions relate to the granted premises, all of which such such [sic] terms and conditions survive the delivery of this deed and are binding upon all persons dealing with the granted premises and enforceable by the grantor and any successor public agency designated by or pursuant to law to the extent provided therein."

The LDA in turn provides that the proposed improvements will be built in accordance with "the final plans and specifications hereinafter identified." The LDA adds that the redeveloper has submitted acceptable preliminary plans and specifications, that final plans and specifications will be in substantial conformity with the preliminary ones, and that construction must "conform[ ] in every respect" to the final plans. The LDA states that the conveyance shall be subject to all conditions, covenants, and restrictions set forth in the LDA and that no provision of the LDA shall be affected or

---

purposes requires no change in the uses that the urban renewal plan permits because that plan already permits "public office and institution" uses on that parcel.

There is no provision in the urban renewal plan or elsewhere for a readjustment of the purchase price for parcel 1A in any circumstance.

impaired because of the delivery of the deed. Furthermore, the LDA provides that certain obligations and covenants, including those concerning beginning and completion of the construction, are "covenants running with the land," enforceable by the BRA. The deed provides that the terms and conditions of the LDA are binding on all persons dealing with the granted premises and are enforceable by the BRA as stated in the LDA. See G. L. c. 121B, § 46 (d) (1992 ed.) (authorizing urban renewal agency to enforce agreements in contract or deed). See also former G. L. c. 121, § 26AAA, inserted by St. 1955, c. 654, § 4; St. 1960, c. 652, § 12.

The Commonwealth rightly does not argue that, if there are restrictive covenants in the deed, they are not enforceable. Such an obligation owed to a public agency is enforceable, if reasonable, without regard to old common law rules concerning easements in gross. See *Bennett* v. *Commissioner of Food & Agric.*, 411 Mass. 1, 6 (1991). Cf. *Gulf Oil Corp.* v. *Fall River Hous. Auth.*, 364 Mass. 492, 497 (1974). This is particularly so when, as here, the public agency owns abutting property (parcel 1B) and is in privity of contract with the redeveloper. Also, the BRA did not lose all rights of enforcement simply because the deed did not provide for a reversion of the land to the BRA if a material condition of the LDA were not met (or because it did not contain a right of entry for condition broken). The BRA retained the right to enforce restrictions on the use of the conveyed parcel, just as the owner of a dominant estate may enforce a servitude against the owner of a servient estate. Moreover, the BRA as an urban renewal agency has statutory authority to enforce covenants and agreements contained in any contract or deed as part of an urban renewal project. G. L. c. 121B, § 46 (d) (1992 ed.). Finally, the Commonwealth's rights are not enhanced either by the fact that it could have taken parcel 1A by eminent domain (St. 1960, c. 635, § 6), but did not, or by the fact that the BRA needed the consent of the State Housing Board to acquire parcel 1A by eminent domain (former G. L. c. 121, § 26BB, as appearing in St. 1946, c. 574, § 1, as amended by St. 1953, c. 647, § 17). Cf. *Commissioner of*

*the Dep't of Community Affairs* v. *Boston Redevelopment Auth.*, 362 Mass. 602, 613 (1972) (The Department of Community Affairs now has the responsibility. See G. L. c. 121B, § 47 [1992 ed.]).

2. The Commonwealth next argues that, even if there are enforceable restrictions on the scope of its use of parcel 1A, the proposed use of parcel 1A for a courthouse does not violate the deed, the LDA, or the urban renewal plan.

The urban renewal plan provides that the land be devoted to public office and institution uses. A courthouse would be a public institution, and thus the proposed use would not violate the use limits of the urban renewal plan. On the other hand, the LDA requires that the property be used for "a health, welfare and education service center," consisting of a mental health center, an employment security building, and "a health, welfare and education building." A courthouse is not a "health, welfare and education building" within the meaning of those words in the LDA. We reject the Commonwealth's argument that those words "invoke generic categories of public functions falling within a broad ambit," provided that general health, welfare, and education purposes are furthered. The LDA will have to be amended to authorize the use of parcel 1A for courthouse purposes so that the revised plans that require BRA approval will be consistent with the purposes for which parcel 1A may be used.

We are in no position on the record to pass judgment on the reasons for the delay in the carrying out of the plan for parcel 1A. The parties have stipulated that no issue is presented as to whether the BRA has violated the LDA. Although the delay of each party may be unreasonable, we do not have the circumstances before us. Moreover, the question of unreasonable delay, laches, and the loss of rights by the passage of time and changed circumstances may not be crucial. The BRA does not oppose the construction of a courthouse. It does not seek specific performance of the original agreement. If the proposed courthouse is subject to BRA review, the parties are willing to work together on a design re-

view process, in which the BRA concedes that it may not unreasonably withhold its approval.

The only current area of major dispute is the question whether the BRA is entitled to a payment based on a redetermination of the price the Commonwealth paid for the property. The BRA has not asserted any right to recover the property, and, on the record before us, we are not aware of any theory under which it could do so successfully.

If the Commonwealth were to proceed with the construction of the courthouse without revision of the LDA, it would, however, be in breach of contract. Because, in the circumstances, the BRA's only remedy would be recovery of contract damages, presumably the courthouse project would not be enjoined. However, the prospect of the Commonwealth constructing a courthouse in knowing breach of contract hardly would show respect for the rule of law.

In an attempt to assist the parties in coming to an agreement on the modification of the LDA (and any related documents), we shall endeavor on the limited record to define the rights of the parties concerning the Commonwealth's financial obligations to the BRA. Because of the proposed change, the BRA will incur unanticipated expenses in the design review process. It has also incurred legal expenses in the defense of this action which the Commonwealth commenced, and it will incur further legal expenses in the revision of the LDA (and perhaps other documents). These expenses appear to be items for which the Commonwealth should consider reimbursing the BRA.

We perceive no principle of State or Federal law that requires the Commonwealth to pay a redetermined purchase price for parcel 1A. This is not a case like *Charles River Park, Inc.* v. *Boston Redevelopment Auth.*, 28 Mass. App. Ct. 795 (1990), in which a private redeveloper, the holder of an option to purchase land at a fixed price, seeks to exercise that option years after it was given, after the land had greatly increased in value, and when the redeveloper had not fulfilled its obligations. Here, the Commonwealth has owned the property for almost thirty years. It still intends to build a

public building. The proposed use is changed, but there is no windfall to the Commonwealth. The public interest is not harmed by the change. The proposed use falls within the uses that the urban renewal plan authorized for parcel 1A. We see no indication that any interest of the Federal government, financial or otherwise, is contravened by the construction of a courthouse on parcel 1A. In fact, the completion of construction on parcel 1A would appear to favor all governmental interests. The purchase price of parcel 1A, or more specifically the proportionate share of that price attributable to the vacant land, need not be recalculated.

3. A judgment shall be entered in the county court declaring that (1) the Commonwealth is not obliged to pay the Boston Redevelopment Authority a readjusted purchase price for parcel 1A and (2) the Commonwealth would be in breach of contract if it were to undertake construction of a courthouse on parcel 1A unless the Commonwealth and the Boston Redevelopment Authority have agreed to modify the Land ·Disposition Agreement to conform to the courthouse proposal and unless the Commonwealth has obtained such approvals of the design of the courthouse project as must be obtained from the Boston Redevelopment Authority.

*So ordered.*