RUSSELL KIERNAN *vs.* CITY OF SALEM & others.[1]

No. 01-P-890.

Essex. January 13, 2003. - May 22, 2003.

Present: JACOBS, KAPLAN, & KAFKER, JJ.

*Way,* Public: discontinuance.

In a civil action brought by a "private redeveloper" against a city and two other defendants, seeking compensation for the city's discontinuance of a public way, the judge properly granted summary judgment in favor of the defendants, where the plaintiff's property was not rendered landlocked by the discontinuance of the public way. [184-187]

In a civil action brought by a "private redeveloper" against a city and two other defendants, seeking compensation for the city's discontinuance of a public way as part of an urban renewal plan, there was no merit in the plaintiff's claim that the conveyance to a museum of the land through which the public way ran was in violation of the urban renewal plan. [187-188]

In a civil action brought by a "private redeveloper" against a city and two other defendants, seeking compensation for the city's discontinuance of a public way, there was no merit to the plaintiff's claim to an equitable easement on the former public way, where there was no easement by grant or through estoppel. [188-189]

CIVIL ACTION commenced in the Superior Court Department on December 18, 2000.

A motion for a preliminary injunction was heard by *S. Jane Haggerty,* J., and the case was heard by *Nancy S. Merrick,* J., on a motion for summary judgment.

*Nicholas J. Decoulos* for the plaintiff.

*Joel Z. Eigerman* for Salem Redevelopment Authority.

*John D. Keenan,* City Solicitor, for city of Salem.

*Anthony S. Fiotto (Jennifer B. Brown* with him) for Peabody Essex Museum, Inc.

KAPLAN, J. As a "private redeveloper," the plaintiff purchased

[1] Salem Redevelopment Authority and Peabody Essex Museum, Inc.

land from the Salem Redevelopment Authority in the area of the city's urban renewal plan and built upon it. Later the city, in connection with the extension of a museum, a project within the renewal plan, discontinued a street adjacent to the plaintiff's property. Upon analysis of the facts to be recounted, we agree with the Superior Court judge that on no suggested theory was the plaintiff entitled to compensation for the discontinuance, and we shall affirm the judgment for the defendants.

On February 23, 1967, the city of Salem, acting under G. L. c. 121B, adopted an urban renewal plan for a large area of the city considered substandard. The city later amended the plan and adopted it on March 23, 1972, as the "Heritage Plaza-East Urban Renewal Plan." As related to the present lawsuit, the plan referred, among its sundry contemplated features, to the "expansion of a historic museum complex," namely, the (nonprofit) Peabody Essex Museum.

In November, 1972, the Salem Redevelopment Authority (SRA) took by eminent domain the fees of a number of streets within the boundaries of the plan (as well as other properties therein, including the land on which Kiernan's building stands). On October 4, 1976, the SRA, by deed entitled "Dedication and Release of Streets and Ways," "convey[ed] and release[d]" to the city "all of its right, title and interest" (without any stated reservation) in certain streets so taken, including Liberty Street as intersected by Essex Street to the north and Charter Street to the south. The preambles to the deed describe its place in the development of the amended urban renewal plan.[2]

The plaintiff Kiernan on June 28, 1978, entered into a contract with the SRA for the purchase of land for "private redevelopment," and in fulfillment of the contract the SRA on August 2, 1978, and September 26, 1984, conveyed to Kiernan with various restrictions the land located at the corner of Essex and Liberty Streets and abutting both streets. (Kiernan received a further auxiliary deed from Leonard Axelrod and others on March 31, 1986.) Upon this parcel Kiernan constructed and now maintains a building with the address 135 Essex Street that

---

[2]Of interest also is the "Cooperation Agreement Between the Salem Redevelopment Authority and City of Salem" under date of February 27, 1967.

houses his street-level "Marine Arts Gallery" and, on the floor above, his residence.

In the late 1990's the Peabody Essex Museum (Museum), with premises opposite Kiernan's property on Liberty Street, was engaged in an expansion program in collaboration with the city and the SRA. In that behalf, on September 15, 1997, the Museum and the city signed a memorandum of understanding by which the city on its part undertook under given conditions to "take all steps necessary to 'abandon' [*sic*] Liberty Street" from Essex to Charter Street "in order to deed it to the Peabody Essex Museum." Following on this understanding, the city council, upon proper notice, conducted a public meeting on April 7, 1999, to consider the issue of the proposed "discontinuance" (the proper term) of Liberty Street as a public way. The issue, considered on the merits in relation to the Museum expansion project, was discussed at length. Kiernan's attorney spoke in opposition to the discontinuance and said Kiernan's position was that he had an interest in Liberty Street and that "you just can't give away the street without somebody taking care of his interest as an abutter." The city council on May 27, 1999, voted 9-2 in favor of the discontinuance (a "legislative" act, see *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 226 [1980]). The council decided not to award damages to any abutting property owner. On November 3, 2000, the city conveyed Liberty Street to the Museum. The Museum has continued building and other expansion activities to date.

Kiernan on December 18, 2000, commenced the present action in Essex Superior Court naming the city, the SRA, and the Museum as defendants, seeking injunctive relief against the discontinuance and, if that should fail, money damages for the alleged injury to his property caused by the discontinuance. His application for preliminary injunctive relief was denied, with opinion, by a Superior Court judge on February 20, 2001. The defendants' joint motion to dismiss the action, becoming a motion for summary judgment pursuant to Mass.R.Civ.P. 12(b), 365 Mass. 755 (1974), was allowed, with opinion, by another Superior Court judge on May 22, 2001. Kiernan appeals from the judgment for the defendants entered upon the allowance of the motion.

Putting any question of law to one side for the moment, we ask what are the practical effects on the ground of the Liberty Street discontinuance as far as Kiernan is concerned. The discontinuance leaves untouched access to and use of Essex Street where the front of Kiernan's building with its regular entrance is located at No. 135. The discontinuance nominally bars all, Kiernan included, from the vehicular use of Liberty Street. The exclusion is the same in kind as to all, with possible variations of consequences among particular persons or properties affected.

We take note of the fact (although Kiernan in his brief merely mentions and takes no particular point upon it) that Kiernan's garage is on the side of the building on former Liberty Street. The record shows that to overcome any inconvenience with the garage, Kiernan in practice is allowed the use of a path or alley, about fifteen to twenty feet in width, from the intersection of former Liberty Street and Essex Street, along Liberty, running to the garage and somewhat beyond. According to statements at the city council meeting on April 7, 1999, the fire and police departments considered this adequate for entry of vehicles. At the argument of the appeal, counsel for the Museum stated that the Museum was prepared to accommodate Kiernan with a private easement, which would be roughly the length of the alley. (The proposed easement could not go the balance of the way to Charter Street because the Museum has built over that part of Liberty.) Counsel stated that all that remained to be done was to reduce the easement to writing. An architect's map of the easement appears in the record and again, more comprehensively, in an addendum to the record received after the argument.

The judge below held (noting but not relying on the proposed easement) that no case was made for Kiernan's entitlement to damages for the discontinuance of the street, nor was his position improved by attempted argument drawn from the urban renewal plan. We write in agreement with the judge on both points. Other contentions are also dealt with *infra.*

1. *Discontinuance of Liberty Street.* Section 21 of G. L. c. 82 authorizes a city council to discontinue a public way; § 24 states that any person sustaining damage in his property by the discontinuance may recover the same under G. L. c. 79 (see

§ 10); and c. 79, § 12, defines the measure of damages thus: "In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel."[3]

The expression "special and peculiar" is drawn from *Smith* v. *Boston*, 7 Cush. 254, 255 (1851) (Shaw, C.J.). This is expatiated in a brace of old cases cited by the judge below. In *Davis* v. *County Commrs. of Hampshire*, 153 Mass. 218, 222-223 (1891), Justice Charles Allen says:

> "The general doctrine is familiar, that, ordinarily, one cannot maintain a private action for a loss or damage which he suffers in common with the rest of the community, even though his loss may be greater in degree. A difficulty sometimes arises, however, in applying this doctrine to a particular case. In *Smith* v. *Boston*, 7 Cush. 254, it was held that the discontinuance of part of a street in a city, whereby the value of lands abutting on other parts of the street is lessened, is not a ground of action against the city by the owner of such lands, if the same are still accessible by other public streets. . . . The court, however, take[s] pains to say, that, if all access to an estate by public streets is cut off, the rule might not apply, and that in such case the owner might perhaps have a claim for damages; and this has been expressly decided in Minnesota. *Brakken* v. *Minneapolis & St. Louis Ry.*, 29 Minn. 41."

In *Hammond* v. *County Commrs. of Worcester*, 154 Mass. 509, 510-511 (1891), Justice Knowlton adds a general reflection:

> "It often happens that some persons are so situated as to derive a very great benefit from a public improvement, while they enjoy and use it no differently from all of the public who use it at all, but they are not for that reason specially taxed for the cost of it; so, too, they may suffer greatly from the abolition or discontinuance of it by the public authorities; but if their suffering does not differ in kind from that of the public generally, they are not entitled to compensation in damages.

---

[3]The Salem city ordinance (then §§ 26.36 et seq.) set out procedures of the city council in (among other things) discontinuing a street.

"The tribunals which lay out and discontinue highways are required by the statutes to adjudicate upon the question what is for the public necessity and convenience; and what is convenient and advantageous to one part of the public may be detrimental to another. In whatever way one may be affected as one of the public by proceedings in regard to highways, he can neither be compelled to pay specially for benefits, nor permitted to receive compensation for damages. This rule, in its application to all the people for a long period of time, generally works substantial justice, although there may be under it cases of hardship."[4]

Many years later, the Supreme Judicial Court summed up in *Malone* v. *Commonwealth*, 378 Mass. 74, 79 (1979):

"Our decisions have not erred on the side of lenience to claimants in placing situations in the class of actionable deprivations of access."[5]

The court cited an array of cases illustrating the lack of lenience (378 Mass. at 79-80 & n.8); the list may be extended.[6] See *Nylander* v. *Potter*, 423 Mass. 158, 163 n.10 (1996), where the court (echoing our quotation from the *Davis* case) said:

"A claim for monetary damages is only available if a parcel is rendered landlocked by the discontinuance of a public way. Potter and her predecessors, therefore, would have been ineligible for damages as the parcel fronts Athol Road, a public way."

Even on a milder test for eligibility, Kiernan's case for compensation is lost (without regard to the accommodation easement that is offered to him), for his property, viewed as a whole, see *Sheehan* v. *Fall River*, 187 Mass. 356, 360-361 (1905), is plentifully accessed from Essex Street. So as a matter

---

[4]Some cases speak of a claim to recover for street discontinuance as being a matter of standing — of plaintiff's capacity to maintain the action. But as this tends to turn on the apparent strength of the claim, the standing nomenclature can and often does disappear.

[5]The *Malone* case speaks further about the old cases and justifications for a strict rule.

[6]See *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. 105, 108-110 (1992); *Harte* v. *Dartmouth*, 45 Mass. App. Ct. 779, 780-783 (1998); *Paul's Lobster, Inc.* v. *Commonwealth*, 53 Mass. App. Ct. 227, 234 (2001).

of law, according to the authorities, the case was ripe for summary disposition.[7]

Kiernan in his brief on appeal does not condescend to deal directly with the statutory discontinuance proceeding and its result unfavorable to himself.[8] Rather, he turns to the extraneous matters discussed *infra*.

2. *Relation to urban renewal plan*. Section 49 of G. L. c. 121B, as inserted by St. 1969, c. 751, § 1, states in part: "If an urban renewal agency shall sell or lease any property acquired by it for an urban renewal project, the terms of such sales or leases shall obligate the purchasers or lessees, (*a*) to devote the land to the use specified in the urban renewal plan for said land." Kiernan stresses "the use specified in the urban renewal plan." Then he quotes a passage from G. L. c. 121B, § 45, the declaration of necessity for urban renewal programs:

> "[T]he acquisition, planning, clearance, conservation, rehabilitation or rebuilding of such decadent, substandard and blighted open areas for residential, governmental, recreational, educational, hospital, business, commercial, industrial or other purposes, including the provision of streets, parks, recreational areas and other open spaces, are public uses and benefits for which private property may be acquired by eminent domain or regulated by wholesome and reasonable orders, laws and directions and *for which*

---

[7]As to any actual injury to Kiernan because of the discontinuance, the judge below ventured to say: "[I]t is at least a point of speculation . . . that if anything, the improvements to the Peabody Essex Museum which include[] placing the main entrance of the new exhibition center directly across from Kiernan's art gallery, would appear to make Kiernan's property more, not less, valuable."

[8]Kiernan suggests that a decision denying recovery for the street discontinuance would constitute a "taking" in violation of the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights (see also G. L. c. 79, § 10). The judge below disposed correctly of this point, observing that there was no basis for a finding that the discontinuance "has affected the plaintiff's reasonable investment-backed expectations or use of his property considered as a whole." See *Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. 530, 533 (1981); *Leonard* v. *Brimfield*, 423 Mass. 152, 154-155, cert. denied, 519 U.S. 1028 (1996). Cf. note 7, *supra*. Nor can any imputation be entertained of a "taking" due to malign motivations or connivance in the discontinuance, see part 2, *infra*.

*public funds may be expended for the good and welfare of this commonwealth"* (emphasis supplied).

Kiernan concludes that "[t]he conveyance of the real estate by the City of Salem to the Peabody Essex Museum" was in violation of the renewal plan, because it simply enriches the Museum and is not an expenditure of public funds "for the good and welfare of this commonwealth." This ignores the plan itself, and is no more than the pronouncement of a litigant's personal opinion, general in form, unaided by any statement or analysis of the details of the relationships among city, SRA, and Museum as they bear on the public good and welfare. The emptiness of the charge is matched by the inaptness of the decisions cited in its support.[9] We add a doubt — also expressed in emphatic terms by the judge below — whether Kiernan, as a "private redeveloper" of a particular parcel of land, can be heard to attack the Museum project — except as it affects his own property interest.[10] Thus Kiernan is brought back to the point or place of beginning, namely, the statutory proceeding for street discontinuance which properly left him without a recovery.

3. *Kiernan's claims of easement.* Kiernan lays claim to an equitable easement in his favor on former Liberty Street to run the full length from Essex Street to Charter Street. This easement supposedly arose at the time the SRA conveyed the parcel to Kiernan in 1978. Certainly there was not an easement by grant. A congeries of "documents" is referred to, but not one or all come near to satisfying the writing and certainty required to establish such an easement. See *Parkinson* v. *Assessors of Medfield,* 395 Mass. 643, 645 (1985), *S.C.,* 398 Mass. 112 (1986), and cases cited. As to the possibility of an easement through

---

[9]Besides other grounds of difference from the present case, the cited cases required interpretation of particular concrete wording describing the given renewal project: "multi-family residential use" in *Boston Redev. Authy.* v. *Charles River Park "C" Co.,* 21 Mass. App. Ct. 777, 778 (1986) (was condominium conversion included?), and "health, welfare and education service center" in *Commonwealth* v. *Boston Redev. Authy.,* 418 Mass. 29, 30 (1994) (did a courthouse satisfy the definition?).

[10]In *Gulf Oil Corp.* v. *Fall River Hous. Authy.,* 364 Mass. 492, 494 (1974), cited by Kiernan, the constitutive instruments allowed for enforcement of restrictions by each individual in the common scheme without a showing of effect on the enforcer's property.

estoppel, Kiernan, offering no evidence of an independent promise or representation or the like, seems to rely only on some vague emanation from the documents. The contention is embarrassed by the doctrine that estoppel generally does not go against the government (here the city exercising its right to discontinue a street), see *LaBarge* v. *Chief Administrative Justice of the Trial Ct.*, 402 Mass. 462, 468 (1988); *New England Continental Media, Inc.* v. *Milton*, 32 Mass. App. Ct. 374, 377 (1992), as well as by the fact that the SRA, Kiernan's conveyor, had granted the fee of Liberty Street without restriction to the city in 1976, two years before the conveyance to Kiernan.[11]

*Judgment affirmed.*

---

[11]Considering other "equities" in the case, the defendants argue that the plaintiff's claims about the street discontinuance should be held barred by laches, because more than eighteen months elapsed between the city council's vote and the commencement of the present action, during which the city conveyed Liberty Street to the Museum and the Museum, according to the defendants, revised designs and started building construction with large sums spent or committed. The question of laches, however, was not well explored below, nor did the judges rule on it. It is immaterial to our decision of the appeal, and we pass it by.