JOSEPH C. ZASKEY *vs.* TOWN OF WHATELY & others.[1]

No. 01-P-682.

Suffolk. December 17, 2002. - August 17, 2004.

Present: ARMSTRONG, C.J., DREBEN, & BERRY, JJ.

*Practice, Civil,* Findings by judge. *Subdivision Control,* Approval not required. *Way,* Public: discontinuance. *Municipal Corporations,* Town meeting. *Evidence,* Parol evidence, Extrinsic affecting writing.

In an action brought by a landowner against a local planning board, challenging the board's denial of the landowner's application for an endorsement under G. L. c. 41, § 81P, that the board's approval was not required on a subdivision plan, and seeking a declaration that the road on which the lots in the subdivision had frontage was a public way, the judge correctly admitted parol evidence to elucidate the meaning of an ambiguous town vote respecting the subject road; moreover, where the evidence demonstrated that the town had voted, in 1888, to discontinue the subject road as a public way, the judge correctly upheld the board's decision denying the landowner's application. [614-618]

CIVIL ACTION commenced in the Land Court Department on January 26, 1999.

The case was heard by *Mark V. Green,* J.

*Wendy H. Sibbison* for the plaintiff.

*Patricia A. Cantor (Joel B. Bard* with her) for the defendants.

ARMSTRONG, C.J. In December of 1988, Joseph C. Zaskey, a landowner in the town of Whately, submitted an application to the local planning board seeking an endorsement, under G. L. c. 41, § 81P, that the board's approval was not required on his plan showing a division of his property into four lots. His four lots had both frontage on Chestnut Mountain Road and total acreage sufficient to comply with the Whately zoning by-law.

---

[1]Apart from the town, the planning board and the selectmen of Whately are defendants, along with abutters: James M. King, Donna M. King, Keith E. Bardwell, Wendy S. Bardwell, and Tofina Associates, Inc.

The board denied the requested endorsement on the basis that Chestnut Mountain Road was not a public way, nor was it a way shown on an approved subdivision plan, or a longstanding way of suitable width, grade, and construction for vehicular traffic and utilities. See G. L. c. 41, § 81L, "Subdivision."

Zaskey appealed the board's decision to the Land Court. He requested the judge to enter an order annulling the board's decision and declaring that Chestnut Mountain Road is a public way. Zaskey argued that Chestnut Mountain Road, whatever its present condition, having been accepted by the town as a public way in 1772, remained so because the Whately town meeting had not voted for its discontinuance.[2] The town asserted it had voted to discontinue the road as a public way at a town meeting held on March 5, 1888.[3]

The evidence at trial included minutes of town meetings and other documents and testimony from competing expert witnesses. From these, the trial judge made detailed findings, concluding that the Whately town meeting had in fact voted to discontinue Chestnut Mountain Road. The judge thus upheld the decision of the board to refuse to endorse Zaskey's plan, and Zaskey appealed.

1. *Facts.* Chestnut Mountain Road was laid out by the Whately town meeting on March 2, 1772. Eleven years later, on December 1, 1783, the town voted to "open the road on Chestnut Mountain." In 1884, after a major flood caused damage to several town roads and culverts, the town meeting reconsidered the wisdom of keeping Chestnut Mountain Road

[2]Zaskey also argued that, because of Chestnut Mountain Road's legal status as a public way, the town was required to construct improvements as necessary and maintain the road as a passable way. In light of our disposition of this appeal, we do not look into the character of the access along the subject way. See, e.g., *Long Pond Estates, Ltd.* v. *Planning Bd. of Sturbridge*, 406 Mass. 253, 255 (1989); *Gates* v. *Planning Bd. of Dighton*, 48 Mass. App. Ct. 394, 398-399 (2000); *Ball* v. *Planning Bd. of Leverett*, 58 Mass. App. Ct. 513, 517-518 (2003).

[3]Discontinuance of a public way can only be accomplished by a vote of the town (or city council). G. L. c. 82, § 21. *Mahan* v. *Rockport*, 287 Mass. 34, 37 (1934); *Carmel* v. *Baillargeon*, 21 Mass. App. Ct. 426, 428 (1986); *Kiernan* v. *Salem*, 58 Mass. App. Ct. 181, 184 (2003). "Non-use or apparent abandonment of a public way by a town does not result in a discontinuance of the public status of the way." *Martin* v. *Building Inspector of Freetown*, 38 Mass. App. Ct. 509, 511 (1995).

as a public way.[4] At a special town meeting on August 30, 1884, article 4 on the warrant put the question:

> "To see if the town will instruct the Selectmen to make any arrangement with the owners of the land on Chestnut Mountain in the matter of damages with a view to discontinue the road over Chestnut Mountain."

The August 30, 1884, town meeting adjourned to September 6, 1884. The minutes for that town meeting record the following action on article 4:

> "Motion made. 'First we instruct our selectmen to get an estimate for land damages with a view of discontinuing the road over Chestnut Mountain, and to find out the cost of a bridle road and to report at the November meeting.' Motion carried and reconsidered. This motion was voted again and again carried."

Two months later, on November 4, 1884, town meeting was convened again. Article 3 on the warrant read: "To hear the report of the selectmen in regard to the road over Chestnut Mountain and act thereon." The minutes recorded this action on the article:

> "Motion — that the matter be postponed until the March meeting, and the Selectmen be instructed to make it a private way if they care, and to make a report to the March meeting. Motion carried."[5]

In the warrant for the town meeting of March 2, 1885, the following question was posed in article 17: "To see what action the town will take in regard [to] repairing or discontinuing the Chestnut Mountain road." The minutes for that meeting recited the action on article 17 as follows: "The owners object to clos-

---

[4]The road was of a steep grade in the area relevant to this dispute and would be subject to washouts and the like.

[5]As reflected in their report of November, 1884, the town's selectmen were then of the view it would be less expensive to widen the road than to discontinue it. The town did widen the road for some stretch and later paid seven dollars to Mary and Irene Dickinson in compensation for its use of their stone for the work.

ing the road leading over Chestnut Mountain. Voted Art. 17: To leave the matter in the hands of the Selectmen."

The matter remained unresolved until article 15 of the warrant for the March 5, 1888, town meeting raised the issue again, putting the following question:

> "To see if the town will vote to discontinue the road known as the 'Chestnut Mountain' road from a point near the foot of the mountain to the Hatfield town line."

The minutes of that town meeting recorded the following action on the article:

> "Motion: That 3 men be chosen by nomination to settle with the Selectmen in the damages arising in the closing of the Chestnut Mountain Road. Amended by E.F. Orcutt to appoint a committee of 3 to make the nomination they to retire and bring in the names. E.T. Orcutt, E.A. Warner and Henry Higgins were chosen, and they reported the names of Rufus Dickinson, Wells Dickinson and Lemuel Graves."

A marginal notation entered by the town clerk next to the above quoted language reads "carried." No later town meeting considered any article respecting Chestnut Mountain Road.

Following the March 5, 1888, vote, the town made payments in damages to several property owners whose land abutted Chestnut Mountain Road.[6] An 1888-1889 annual town report recites that the town had paid Edmond Donovan $100 and Champion B. Dickinson $15, for "damage [to] Chestnut Mountain road" in February, 1889. And, in the 1889-1890 annual report, reference is made to the town's payment of $25 to E.S. Munson for "damage discontinuance of road" and of $10 to Fred L. Graves for damage to land in 1889.[7]

It is agreed there was no vote by the Whately town meeting

---

[6]In or about 1888, parcels that abutted Chestnut Mountain Road, north to south on the easterly side, were then owned by E.S. Munson, Henry Graves, Mary and Irene Dickinson, and the Crafts. Parcels, north to south on the westerly side of the way, were owned by Henry Bardwell, Emerson C. Warner, Mary and Irene Dickinson, and one Donovan.

[7]In the January 1, 1909, deed from Lyman and Herbert S. Munson, conveying land to one George Gunn, there is a reference to "the Old Highway over

to discontinue any other public way during the three years that immediately preceded or followed the March 5, 1888, meeting. Nor was there any indication of a vote by the town to pay damages for a purpose other than road closings.[8] Lastly, Chestnut Mountain Road did not appear on a list of "public town roads" in Whately, compiled and adopted by the Whately selectmen at a meeting on April 6, 1945. In other words, from March, 1888, until Zaskey asserted his claim, there seems to have been no suggestion from any quarter that Chestnut Mountain Road from the foot of the mountain to the Hatfield line remained a public way that the town was obligated to maintain.

2. *Proceedings below.* The Land Court judge determined that the town's vote on March 5, 1888, was ambiguous and, thus, without objection from either party, looked to relevant extrinsic evidence to construe its meaning. The judge ruled that the town's vote ("carried") referred "both to the main article and to the motion," reasoning that "approval of a committee to settle damages for closing the road can have meaning only if the road closing was approved."

Zaskey attacks aspects of the judge's findings and ultimate conclusion that Chestnut Mountain Road had been discontinued by vote of the Whately town meeting on March 5, 1888. He contends the plain meaning of the recorded minutes is that the town voted simply to approve creation of the designated committee and that there was no vote on discontinuing the road itself. Though he did not pursue this line of argument at trial, Zaskey now contends that the vote was unambiguous and that the judge erred in admitting extrinsic evidence to show the town meeting had voted to discontinue the road. Even if we

Chestnut Mountain north and south now discontinued." Though other contemporaneous deeds omit such a reference, the Munsons' deed is of probative value on the disputed point. There was also evidence of a conveyance in 1897 from the estate of Mary Dickinson to Luman S. Crafts, of about seventy acres of land that abutted Chestnut Mountain Road, with the subject deed making no reference whatsoever to the road.

[8]That an affected landowner, upon the requisite showing of a special and peculiar injury, is entitled to compensation for the discontinuance of a public way has long been the law in this Commonwealth. G. L. c. 79, §§ 10, 12. For a history on the point, see *Kiernan* v. *Salem*, 58 Mass. App. Ct. 181, 185-186 (2003).

should approve the admission of such evidence, Zaskey argues, we should apply a de novo standard of review, essentially disregarding the judge's findings and conclusions, because the critical evidence in the case was not testimonial but documentary.

3. *Discussion.* a. *Standard of review.* The usual standard, set forth in Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996), is that an appellate court will accept the facts as found by the judge in a jury-waived case, unless shown to be clearly erroneous, and will accord deference to the judge's conclusions. There is authority for the more intrusive, de novo standard of review in cases where, as here, the evidence is entirely or primarily documentary, and there is authority also to the contrary. See *Strand* v. *Herrick & Smith*, 396 Mass. 783, 789, and nn. 5, 6 (1986), and *Markell* v. *Sidney B. Pfeifer Foundation*, 9 Mass. App. Ct. 412, 429-432 (1980). For purposes of decision it is unnecessary to resolve the question because, even if we treat the matter de novo, we are in accord with the judge's conclusions. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 525, cert. denied, 493 U.S. 894 (1989).[9]

b. *Merits.* It has long been settled that the records of proceedings of a town meeting are conclusive as to all business transacted. See, e.g., *Halleck* v. *Boylston*, 117 Mass. 469, 470 1875); *Suburban Land Co., Inc.* v. *Billerica*, 314 Mass. 184, 192 (1943). "The record is the appropriate evidence of the doings of the meeting, and it is not open to contradiction, enlargement or explanation by parol evidence." *Andrews* v. *Boylston*, 110 Mass. 214, 215 (1872). See *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, 605 (1935).

The general rule is subject to a qualification, however, that, where a town vote is ambiguous, its subject matter "may be established and its identity shown by parol evidence." *Mayo* v.

___

[9]The parties agreed prior to trial that the town would have the burden to prove discontinuance of the road. Though he implicitly cast some doubt on that arrangement, the judge did not decide the question given his conclusion that the town had in any event satisfied that burden. Compare *Schulze* v. *Huntington*, 24 Mass. App. Ct. 416, 417 (1987); *Rivers* v. *Warwick*, 37 Mass. App. Ct. 593, 594 (1994).

*Springfield,* 260 Mass. 594, 598 (1927).[10] "This is merely an application of the rule that parol evidence may be resorted to for the purpose of applying the words of a written instrument to the specific object of the writing." *Ibid.* In *Mayo,* the court allowed the town to use parol evidence in the form of a pamphlet, which had been distributed at the town meeting and which described proposed changes to its local zoning by-law, to establish the subject matter of a town meeting vote. The record of the vote had only been expressed in terms of approval to amend the zoning by-law "by adding thereto Chapter VII commonly known as the Zoning Ordinance" and making reference to "Section 20." *Id.* at 596. As that particular chapter, which was labeled "Section 20," was contained in the pamphlet, the court upheld the admission of the pamphlet in evidence and ruled that the town meeting had adopted the proposed changes. See *Avery* v. *Stewart,* 1 Cush. 496, 501-502 (1848); *Niles* v. *Patch,* 13 Gray 254, 261 (1859).

Both *Avery* and *Niles* involved a challenge to an ambiguous or indefinite town vote to discontinue a way. In the former case, the Supreme Judicial Court pieced together records of distinct town meetings, including an 1840 warrant article that read as follows: "To see if the town will lay out, alter, or discontinue, or otherwise dispose of, any town way." *Avery* v. *Stewart,* 1 Cush. at 502. From those various records, the court determined that the subject way had been accepted as a public way in 1799, *id.* at 501, and, based on the 1840 warrant article, ruled not only was there sufficient notice for the town's vote "to discontinue the road leading from William Gate's to the pond," but that it was proper to rely on parol evidence to prove the identity of the discontinued road. *Id.* at 502.

In *Niles,* which is akin to the present situation, the town meeting vote on road discontinuance was " 'to leave it to the discretion of the selectmen.' " *Niles* v. *Patch,* 13 Gray at 260. Thereafter, the selectmen made a report and recommended the way be discontinued. The town voted to accept the report, but never voted specifically on discontinuing the way. In ruling that

---

[10]See generally Randall & Franklin, Municipal Law and Practice § 160, at 205 (4th ed. 1993).

the subject way had been legally discontinued, Chief Justice Shaw, observed the following:

> "We think the proceedings in this case were peculiar; and taking the petition, the reference with discretionary power, the reports and the warrants, the plain and natural construction of the vote of the town was, to accept the doings of the selectmen in discontinuing the way definitely described, in other words a vote to discontinue the way."

*Id.* at 261. And, more recently, in a rescript opinion issued by this court in *Dennis* v. *Lighthouse Inn, Inc.*, 6 Mass. App. Ct. 970 (1979), arising from a claim by a town for possession because the area of land it had conveyed to the defendant exceeded what was authorized by town meeting, we stated, "[I]t was not error for the judge to admit extrinsic evidence 'to ascertain the meaning of the vote [i.e., the specific portion of the parcel] adopted by the town meeting.' " *Id.* at 970, quoting from *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 (1976).

The present case falls within this narrow line of authority that permits use of parol evidence to elucidate the meaning of an ambiguous or otherwise unclear vote.[11] Given the undoubted ambiguity in its March, 1888, vote and peculiar history of the proceedings of the town respecting the subject way, the judge was correct to admit relevant extrinsic evidence.

That evidence included the text of warrant article 15, which aided in construing the meaning of the ambiguous March, 1888, vote. *Andrews* v. *Prouty*, 13 Allen 93 (1866). In *Prouty*, the Supreme Judicial Court addressed a challenge to a town meeting vote, approving the reimbursement of individuals who had made contributions in recruiting soldiers in 1864 during the Civil War. It was said the vote was indefinite in scope and in excess of the express authority granted the town by statute. The court pointedly stated the following: "The [warrant] article under which a vote is passed will usually aid us in construing the vote." *Id.* at 95. And, in answering the claim that the vote

---

[11]Nor does the general rule "preclude a public board from showing that a clerical error was made [in the official record] or from correcting it." *Selectmen of Stockbridge* v. *Monument Inn, Inc.*, 14 Mass. App. Ct. 957, 958 (1982).

could be said to cover payments prior to 1864, the court ruled as follows: "This might be so were it not for the reference to the statute, and the language of the article in the warrant to which it must be understood to refer, in the absence of a clear implication to the contrary." *Ibid.*

Similarly, the Land Court judge properly ruled that, in the absence of a clear implication to the contrary, the recorded vote "carried" must refer to both article 15, which proposed discontinuance of the road, and the motion, which required appointment of a committee to determine damages "arising in the closing of the" road.[12] No such contrary implication can be reasonably drawn on this record. Thus, we agree with the Land Court judge for the simple and commonsense reason that there would have been no occasion to appoint a committee to advise the selectmen in settling damage awards for closing the road unless Chestnut Mountain Road was in fact discontinued. The motion is consistent with warrant article 15, and the two can reasonably be seen as supplementary to one another. In light of the attendant circumstances, which confirm the discontinuance of the road, to interpret the March, 1888, vote as Zaskey does, as only having referred the cost of discontinuance to a committee, seems to us unduly restrictive of the language describing that vote.[13]

Nor do we see cause to look to strict rules of legislative or parliamentary procedure, as Zaskey would have us, since his request is based on material as to the practice of the then town

---

[12]"[A] warrant is of the essence of the town meeting." *Attorney Gen.* v. *Methuen,* 236 Mass. 564, 574 (1921). " '[T]he subjects to be acted upon [at town meeting] must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal.' " *Blomquist* v. *Arlington,* 338 Mass. 594, 598 (1959), quoting from *Burlington* v. *Dunn,* 318 Mass. 216, 218, cert. denied, 326 U.S. 739 (1945).

[13]Relatedly, we do not agree with Zaskey that the March 5, 1888, vote is deficient in its description of the point from which the discontinuance is effected. Based on his decision, the judge implicitly rejected this claim by Zaskey, and it is enough to say the description in the March, 1888, vote, supplemented by article 15 of the warrant, is not unlike the language found in other nineteenth century town meeting votes, see, e.g., *Avery* v. *Stewart,* 1 Cush. at 502, deemed sufficient by our courts. We presume the town meeting knew with reasonable certainty of the referenced landmarks (i.e., "from a point near the foot of the mountain to the Hatfield line").

moderator, which Zaskey did not introduce at trial. "[A]lthough in general the action of town meetings conforms to parliamentary procedure, it never has been held that they are governed by the strict rules of legislative practice." *Wood* v. *Milton*, 197 Mass. 531, 533 (1908). See *Salem Sound Dev. Corp.* v. *Salem*, 26 Mass. App. Ct. 396, 398-399 (1988).

It follows that the judgment entered below must be affirmed.

*So ordered.*